513 So.2d 129 (1987)
Jesse HILL, Petitioner,
v.
DEPARTMENT OF CORRECTIONS, STATE OF FLORIDA, Respondent.
No. 69016.
Supreme Court of Florida.
September 24, 1987.
Gregg J. Ormond of Lisk & Ormond, P.A., and Haggard & Kirkland, P.A., Coral Gables, for petitioner.
Robert A. Butterworth, Atty. Gen., and Thomas H. Bateman, III, Sp. Asst. Atty. Gen., Tallahassee, and Charles F. Mills, *130 Dept. of Corrections, South Miami, for respondent.
OVERTON, Justice.
This is a petition to review a decision of the Third District Court of Appeal reported as Department of Corrections v. Hill, 490 So.2d 118 (Fla. 3d DCA 1986). The district court certified the following question as one of great public importance:
Has the State of Florida, pursuant to section 768.28, Florida Statutes (1983), waived its Eleventh Amendment and state common law immunity and consented to suits against the State and its agencies under 42 U.S.C. Section 1983?
Id. at 120. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
The facts, set out in detail in the district court opinion, reflect that the petitioner in this action, Jesse Hill, filed a complaint against the respondent, Department of Corrections (DOC), alleging false imprisonment, negligence, and a violation of civil rights pursuant to 42 U.S.C. § 1983 for the conduct of a probation supervisor in asserting that Hill had violated his probation. The trial court dismissed the civil rights action, but submitted the claims of negligence and false imprisonment to the jury with a special interrogatory verdict. The parties agreed to a specific instruction on the verdict form which read:
In determining the total amount of damages, do not make any reduction because of negligence, if any of plaintiff Jesse Hill. If you have found Jesse Hill negligent in any degree, the court in entering judgment will reduce Jesse Hill's total amount of damages (100%) by the percentage of negligence which you found is chargeable to Jesse Hill.
Id. at 119. The jury found DOC liable for false imprisonment and 75 percent comparatively negligent, and awarded Hill $750,000 in damages. Reasoning that comparative negligence is not a defense to false imprisonment, the trial court entered judgment for the total amount of damages. DOC, after the time had run for a motion for new trial, sought relief from the asserted erroneous instruction by motion under Florida Rule of Civil Procedure 1.540 which was denied by the trial court.
On appeal, the Third District Court of Appeal affirmed the trial court's dismissal of Hill's section 1983 civil rights claim, reasoning that for purposes of section 1983 the state has not waived its sovereign immunity, and certified that question to this Court; on the rule 1.540 motion, the district court held that the trial court's instruction misled the jury to DOC's prejudice. Although the court found DOC liable for the full amount of any damages caused by false imprisonment, it reversed the cause for a new trial on damages.

Civil Rights Claim
In order to answer the certified question, it is first appropriate to consider the effect of the eleventh amendment on suits filed under 42 U.S.C. § 1983. The eleventh amendment to the United States Constitution expressly provides:
The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced on or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
This language bars suit by a citizen of one state against another state. The United States Supreme Court, in Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), clarified the language of the amendment to grant states immunity from suit by any person, regardless of what state citizenship they enjoyed. The Hans Court expressly rejected the proposition that the eleventh amendment allows a state to be sued by its own citizens under a federal statute. Writing for the majority, Justice Bradley stated:
Can we suppose that, when the Eleventh Amendment was adopted, it was understood to be left open for citizens of a State to sue their own state in the federal courts, whilst the idea of suits by citizens of other states, or of foreign states, was indignantly repelled? ... .
... .
The suability of a state, without its consent, was a thing unknown to the law. *131 This has been so often laid down and acknowledged by courts and jurists that it is hardly necessary to be formally asserted.
Id. at 15-16, 10 S.Ct. at 507.
In order for a damage suit to be brought against a state in federal court, one of two situations must occur. First, Congress, by explicit legislative enactment, may abrogate the state's immunity. See Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). The United States Supreme Court has held that section 1983 did not constitute a Congressional abrogation of a state's eleventh amendment immunity. See Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
The second situation arises when the state itself consents to be sued in federal court, thereby waiving its eleventh amendment immunity. The United States Supreme Court in Edelman, stated:
In deciding whether a state has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction."
415 U.S. at 673, 94 S.Ct. at 1360 (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909).
With this background, we then consider whether a civil rights suit under 42 U.S.C. § 1983 can be brought against the state and one of its agencies in a Florida court. Hill correctly points out that the eleventh amendment immunity is inapplicable because it pertains only to suits filed in federal court. Hill contends first that the state has no common law immunity against a suit brought under federal law alleging the violation of a federal constitutional right. We reject this argument.
At the outset, we note that even though Quern was a federal court action involving the eleventh amendment, the United States Supreme Court made the statement in that case that Congress, in enacting section 1983, did not intend "to override the traditional sovereign immunity of the States." 440 U.S. at 341, 99 S.Ct. at 1145. Moreover, this position has also been adopted by a number of courts throughout the country.
In Ramah Navajo School Board v. Bureau of Revenue, 104 N.M. 302, 720 P.2d 1243 (N.M.App.), cert. denied, ___ U.S. ___, 107 S.Ct. 423, 93 L.Ed.2d 373 (1986), the court addressed the question by first explaining:
Sovereign immunity and Eleventh Amendment immunity are, of course, distinct concepts, but both immunities are designed to protect the same object  state government. Civil Actions Against State Government: Its Divisions, Agencies and Officers (Winborne, ed. 1982). The Eleventh Amendment shields the operation of state governments from intrusions from the federal judiciary while sovereign immunity protects state government affairs from interference by plaintiffs and state courts. Id. Therefore, when a Section 1983 suit is brought in federal court, the court analyzes whether the defendant is a "person" within the meaning of Section 1983 or, more meaningfully expressed, whether the Eleventh Amendment bars the suit from being brought against that defendant. Similarly, in Section 1983 actions brought in state courts, the court determines whether sovereignty immunity bars the suit. Gumbhir v. Kansas State Board of Pharmacy [231 Kan. 507, 646 P.2d 1078].
104 N.M. at 307, 720 P.2d at 1248. The court then reasoned that since Congress in enacting section 1983 did not intend to destroy the state's eleventh amendment immunity from suits brought in federal court, it logically followed that Congress also did not intend to abrogate the state's sovereign immunity from section 1983 suits brought in state courts.
In concluding that the State of Michigan retained sovereign immunity with respect to section 1983 actions, the court in Karchefske v. Department of Mental Health, *132 143 Mich. App. 1, 371 N.W.2d 876 (1985), stated:
Clearly, the sovereign immunity of the states was well established at common law at the time that § 1983 was enacted. Furthermore, we are convinced that state immunity was supported by such strong policy reasons that "Congress would have specifically so provided had it wished to abolish the doctrine." Owen v. City of Independence, 445 U.S. 622, 637, 100 S.Ct. 1398 [1408], 63 L.Ed.2d 673 (1980), quoting Pierson v. Ray, supra, 386 U.S. 547 p. 555, 87 S.Ct. [1213] p. 1218 [18 L.Ed.2d 288].
In considering the policy supporting sovereign immunity of the states from liability in their own courts, we find a compelling analogy in the Eleventh Amendment, even though the latter provision on its face governs the federal judicial power. The Eleventh Amendment is "but an exemplification" of the fundamental rule that "a State may not be sued without its consent". Ex parte State of New York No. 1, 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921), quoted in Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 98, 104 S.Ct. 900, 907, 79 L.Ed.2d 67, 77 (1984). Therefore, we would expect the same clarity of Congressional intent to abrogate traditional sovereign immunity as the United States Supreme Court demanded (and found lacking) in Quern, supra, with respect to Eleventh Amendment immunity.
143 Mich. App. at 8-9, 371 N.W.2d at 881 (footnote omitted).
In Kapil v. Association of Pennsylvania State College, 68 Pa.Cmmw. 287, 448 A.2d 717 (1982), rev'd on other grounds, 504 Pa. 92, 470 A.2d 482 (1983), the court said:
It would seem that one of the most "traditional" dimensions of state sovereign immunity is that which states historically have enjoyed in their own courts from most suits for money damages. In any event, that dimension of state sovereign immunity clearly preexisted Section 1983 of the federal Civil Rights Act.
Given the Quern construction of Section 1983, it follows that a state's sovereign immunity, from a Section 1983 damage action, is not solely that immunity which the 11th amendment of the federal Constitution provides as to such suits in federal courts. Rather, a state's "traditional" sovereign immunity, to the extent that the state has preserved it, would also bar a Section 1983 damage action in the state's own courts... . Thus, a state's own courts may not entertain such an action against a state or its agencies, unless the state has in that respect waived its sovereign immunity.
68 Pa.Cmmw. at 292-93, 448 A.2d at 720-21 (emphasis in original). Accord De Bleecker v. Montgomery County, 292 Md. 498, 438 A.2d 1348 (1982); Woodbridge v. Worcester State Hospital, 384 Mass. 38, 423 N.E.2d 782 (1981); Kristensen v. Strinden, 343 N.W.2d 67 (N.D. 1983).
Thus, we hold that the common law immunity of the state of Florida and its agencies has not been abrogated by 42 U.S.C. § 1983. However, just as in cases involving the eleventh amendment, it is also necessary to consider whether there has been a waiver of sovereign immunity. Florida's statute on waiver of sovereign immunity is section 768.28, Florida Statutes, which provides, in pertinent part:
(1) In accordance with s. 13, Art. X, State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act... .
... .
(5) The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period *133 before judgment. Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000... .
... .
(9)(a) No officer, employee, or agent of the state or its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injuries or damages suffered as a result of any act, event, or omission of action in the scope of his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property... . The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
The question of whether section 768.28 constituted a waiver of Florida's eleventh amendment immunity against suit in federal court under 42 U.S.C. § 1983 was addressed by the United States District Court for the Northern District of Florida in Shinholster v. Graham, 527 F. Supp. 1318 (N.D.Fla. 1981). After a complete analysis of section 768.28 and its legislative history, the court concluded:
[T]he State of Florida has not statutorily waived its Eleventh Amendment immunity for itself, nor for any arms of the state, nor for its officers, employees or agents sued in their official capacities... . [T]he Florida legislature's intent to limit the waiver of sovereign immunity solely to tort claims and to the exclusion of federal civil rights suits is abundantly clear.
Id. at 1331-32.
This issue was also considered on appeal by the United States Court of Appeals for the Eleventh Circuit in Gamble v. Florida Department of Health and Rehabilitative Services, 779 F.2d 1509 (11th Cir.1986). That court rejected the suggestion that section 768.28 represents a broad waiver of sovereign immunity, finding instead that the abrogation was limited to traditional torts; specifically, those in which the state would be liable if it were a private person. The court concluded:
The waiver does not constitute consent to suit in federal court under § 1983... . [W]e note that the statute consistently refers to "tort action," persons "liable in tort," and the like without any mention that such terms include federal civil rights actions. We agree ... that § 768.28, when viewed alone, was intended to render the state and its agencies liable for damages for traditional torts under state law, but to exclude such liability for "constitutional torts."
Id. at 1515.
We agree with these federal interpretations of our statute and find them fully applicable with respect to whether Florida has waived its common law immunity against civil rights actions filed in state courts. While Florida is at liberty to waive its immunity from section 1983 actions, it has not done so. The recovery ceilings in section 768.28 were intended to waive sovereign immunity for state tort actions, not federal civil rights actions commenced under section 1983. Accordingly, we answer the certified question in the negative.

New Trial on Damages
We turn next to Hill's claim that the district court erred in ordering a new trial on damages as a result of the allegedly misleading jury instruction and verdict form. The record reflects that the challenged instruction was prepared and submitted by DOC and read at its request upon agreement by both parties. DOC did not object to the instruction at trial, nor did it raise the issue on a motion for new trial. Rather, DOC attempted later, by a rule 1.540 motion, to secure relief from the final judgment and obtain a new trial. The trial court denied the motion, noting that rule 1.540, which addresses clerical mistakes, fraud, inadvertence, excusable neglect, newly discovered evidence, etc., was an inappropriate vehicle by which to seek relief.
Florida Rule of Civil Procedure 1.470(b), titled "Instructions to Jury," provides:

*134 Not later than at the close of the evidence, the parties shall file written requests that the court charge the jury on the law set forth in such requests. The court shall then require counsel to appear before it to settle the charges to be given. At such conference all objections shall be made and ruled upon and the court shall inform counsel of such general charges as it will give. No party may assign as error the giving of any charge unless he objects thereto at such time or the failure to give any charge unless he requested the same... .
We have expressly held that where no objection is made to the form of the verdict, any defect as to form is waived. See Higbee v. Dorigo, 66 So.2d 684 (Fla. 1953).
In a similar case concerning a verdict form, the Second District Court of Appeal determined that appellants waived any ambiguities when they failed to object to the form of the verdict. Rosario v. Melvin, 446 So.2d 1158 (Fla. 2d DCA 1984). Likewise, the Fifth District Court of Appeal noted in Keller Industries, Inc. v. Morgart, 412 So.2d 950 (Fla. 5th DCA 1982):
The fault ... must be placed upon the ... trial attorney who led the court into error by approving, or failing to object to, the form of the verdict.... For all we know ... trial counsel intentionally, for tactical reasons, chose not to bring the problem to the court's attention.
Id. at 951. It is unrefuted that the allegedly misleading verdict form was agreed to by both parties. We hold its use did not constitute fundamental error and the granting of relief on the basis of rule 1.540 was improper. We note the verdict form was consistent with the dictates of the Florida Standard Jury Instructions and the model verdict forms.

Conclusion
For the reasons expressed, we find Florida has not waived immunity to a federal statutory civil rights claim under 42 U.S.C. § 1983 and the district court improperly granted a new trial on damages. Accordingly, we approve that portion of the district court decision finding no waiver of sovereign immunity, but we quash that portion of the decision which orders a new trial on damages.
It is so ordered.
McDONALD, C.J., and SHAW, BARKETT, GRIMES AND KOGAN, JJ., concur.
EHRLICH, J., concurs with an opinion.
EHRLICH, Judge, concurring.
I concur with the Court's opinion but wish to add an additional reason why a new trial was improperly granted by the district court.
While the court's instruction was technically in error, the jury was told to determine the total amount of plaintiff's damages and not to "make any reduction because of negligence." The "negligence" aspect of the charge was in error. The jury found DOC liable for false imprisonment and that finding supports the damage award. The further finding that DOC was "75 percent comparatively negligent" can be ignored.