STATE of North Dakota, By and Through its Tax Commissioner, Robert E. HANSON, Plaintiff, Appellant and Cross–Appellee,

v.

QUILL CORPORATION, Defendant, Appellee and Cross–Appellant.

Civ. No. 920283.

Supreme Court of North Dakota.

May 11, 1993.

Donnita A. Wald (argued), and Christianne Y. Runge (appearance), Asst. Attys. Gen., Tax Dept., and M.K. Heidi Heitkamp (no appearance), Atty. Gen., Bismarck, for plaintiff, appellant and cross-appellee.

Richard A. Hanson (argued), and Don S. Harnack (appearance), McDermott, Will & Emery, Chicago, IL, and William P. Pearce (appearance), of Pearce & Durick, Bismarck, ND, for defendant, appellee and cross-appellant.

ON PETITION FOR REHEARING

MESCHKE, Justice.

Quill Corporation has filed a petition for rehearing of our decision after remand from the United States Supreme Court. Quill asserts that it is a prevailing plaintiff in its 42 U.S.C. § 1983 action and is entitled to an award of attorney's fees under 42 U.S.C. § 1988. We hold that a § 1983 action seeking to enjoin the collection of state taxes is not cognizable in state court, and accordingly Quill is not entitled to recover its attorney's fees under § 1988.

The factual and procedural history of this litigation is outlined in our original opinion in this case. *See State v. Quill Corp.*, 470 N.W.2d 203 (N.D.1991), *reversed by Quill Corp. v. North Dakota*, — U.S. ——, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). The State sought a declaratory judgment under NDCC Ch. 32–23 that Quill was required to collect and remit the applicable use tax on its sales of office equipment and supplies to customers in North Dakota. Quill answered that the use tax provisions, NDCC Ch. 57–40.2, violated Quill's rights under the Due Process Clause and Commerce Clause of the United States Constitution. Quill also counterclaimed for § 1983 relief for violation of its Due Process and Commerce Clause rights, and requested attorney's fees under § 1988.

The trial court held that NDCC 57–40.2–01(6) and (7) was unconstitutional as applied to Quill and that Quill could not be forced to collect and remit the use tax. The court dismissed Quill's counterclaim.

The State appealed to this court and Quill cross-appealed. We reversed, holding that imposition of the duty to collect and remit the use tax did not violate Quill's Due Process or Commerce Clause rights. *State v. Quill Corp.* The United States Supreme Court granted certiorari and reversed. *Quill Corp. v. North Dakota,* — U.S. ——, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). The Court agreed that Due Process did not bar imposition of the duty to collect the tax in this case, but held that the Commerce Clause prohibited imposition of the duty upon Quill.

Upon remand, we vacated the part of our opinion that had been reversed by the United States Supreme Court and affirmed the judgment of the trial court. *State v. Quill Corp.,* 487 N.W.2d 598 (N.D.1992). Quill petitioned for rehearing, asserting that it was entitled to prevail on its § 1983 counterclaim and was entitled to attorney's fees under § 1988. We ordered supplementary briefing and granted a rehearing.

The State argued that this case is controlled by *Linderkamp v. Bismarck School District No. 1,* 397 N.W.2d 76 (N.D. 1986), in which we held that taxpayers could not bring a § 1983 action in state court to enjoin the assessment of state taxes if there was an adequate remedy available under state law. Quill argues that the rationale underlying *Linderkamp* has been rejected by the United States Supreme Court in *Howlett v. Rose,* 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990).

In *Linderkamp,* taxpayers sought to enjoin the levy of certain taxes by a school district. They sought relief under the Declaratory Judgment Act, asserted a § 1983 claim, and requested attorney's fees under § 1988. The district court granted summary judgment under the Declaratory Judgment Act and enjoined certain practices by the school district, but dismissed the § 1983 claim and refused to award attorney's fees.

On appeal, we considered the application of the Tax Injunction Act, 28 U.S.C. § 1341, that directs:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

We reasoned that § 1341 would have prohibited the taxpayers from litigating their § 1983 claim in federal court. Although we recognized that § 1341 directly applied only to federal district courts, we considered the policies underlying the Tax Injunction Act and the rationale employed by other state courts in similar cases. We concluded that § 1983 actions could not be brought in state court to enjoin the assessment, levy, or collection of state taxes:

> Thus, although we conclude that the Tax Injunction Act does not *per se* apply to state court actions, we nevertheless conclude that imposition of similar limitations under *state* law upon § 1983 actions brought in state court challenging the levy of state taxes is appropriate. We therefore hold that a taxpayer may not bring a § 1983 action in state court seeking to enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law where an adequate state remedy is available.

*Linderkamp,* 397 N.W.2d at 80 (footnote omitted). Because the taxpayers in *Linderkamp* had an adequate remedy under state law, we concluded that their § 1983 action was not cognizable in state court and, accordingly, that they were not entitled to attorney's fees under § 1988.

Quill concedes that the Declaratory Judgment Act provides a plain, speedy, and efficient remedy under state law, and that a § 1983 action in federal court would be barred by the Tax Injunction Act. Quill also apparently concedes that, if it is still good law, *Linderkamp* would bar its § 1983 action in state court. Quill's argument therefore rests entirely upon the premise that *Linderkamp* has been abrogated by *Howlett v. Rose.*

In *Howlett,* a former high school student began a § 1983 action in a Florida state court against a school board and three school officials, asserting that a search of his vehicle while it was parked on school premises violated his federal constitutional rights. The school board asserted that it was immune from suit under Florida's sovereign immunity law. The trial court dismissed the federal claims. The Florida District Court of Appeal held that Florida's statutory waiver of sovereign immunity did not apply to § 1983 cases, and affirmed dismissal of the federal claims. The Supreme Court of Florida denied review, and the United States Supreme Court granted certiorari.

The Supreme Court expressed the question presented in *Howlett* this way:

> The question in this case is whether a state-law defense of "sovereign immunity" is available to a school board otherwise subject to suit in a Florida court even though such a defense would not be available if the action had been brought in a federal forum.

*Howlett,* 496 U.S. at 358–359, 110 S.Ct. at 2433. The Court, after reviewing Florida statutes and case law, concluded that the school board could not rely upon the sovereign immunity defense, when such a defense would be unavailable if the action had been brought in federal court. The Court therefore reversed the judgment of the Florida District Court of Appeal.

Quill argues that *Howlett* stands for the proposition that a state court may not refuse to entertain a § 1983 action upon state law principles, even if the action could not have been brought in federal court. Quill misreads *Howlett.* In its brief, Quill argues:

> The parallels between the Florida court decision in *Howlett* and this Court's decision in *Linderkamp* are striking. In *Howlett,* plaintiff brought a state court action against a school board and several school officials which could not have been brought in federal court because of the Eleventh Amendment. Here, Quill counterclaimed for declaratory relief, a claim which could not be brought in federal court because of 28 U.S.C. § 1341. However, the *Howlett* problem arose specifically because the school board and school officials were *not* protected by Eleventh Amendment immunity, and *would* have been subject to suit in federal court. That is not the case for Quill.

The Florida District Court of Appeal opinion in *Howlett* was premised upon the Florida Supreme Court's decision in *Hill v. Department of Corrections,* 513 So.2d 129 (Fla.1987), *cert. denied,* 484 U.S. 1064, 108 S.Ct. 1024, 98 L.Ed.2d 989 (1988), in which the court applied the state sovereign immunity defense to preclude a § 1983 action in state court against a state agency. Addressing the Florida District Court of Appeal's reliance upon *Hill,* the Supreme Court stated:

> On its facts, the disposition of the *Hill* case would appear to be unexceptional. The defendant in *Hill* was a state agency protected from suit in a federal court by the Eleventh Amendment. See *Quern v. Jordan,* 440 U.S. 332, 341 [99 S.Ct. 1139, 1145, 59 L.Ed.2d 358] (1979) (§ 1983 does not "override the traditional sovereign immunity of the States"). As we held last Term in *Will v. Michigan Dept. of State Police,* 491 U.S. 58 [109 S.Ct. 2304, 105 L.Ed.2d 45] (1989), an entity with Eleventh Amendment immunity is not a "person" within the meaning of § 1983. The anomaly identified by the State Supreme Court, and by the various state courts which it cited, that a State might be forced to entertain in its own courts suits from which it was immune in federal court, is thus fully met by our decision in *Will. Will* establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court.

> The language and reasoning of the State Supreme Court, if not its precise holding, however, went further. That further step was completed by the District Court of Appeal in this case. As that court construed the law, Florida has extended absolute immunity from suit not only to

the State and its arms but also to municipalities, counties, and school districts that might otherwise be subject to suit under § 1983 in federal court. That holding raises the concern that the state court may be evading federal law and discriminating against federal causes of action.

*Howlett*, 496 U.S. at 365–366, 110 S.Ct. at 2437 (footnotes omitted).[1] *Howlett* thus makes clear that a state is still not subject to suit under § 1983 in either federal court or state court.

Quill also urges that a passage from *Howlett* supports its assertion that *Linderkamp* is no longer good law:

> Federal law is enforceable in state courts not because Congress has determined that federal courts would otherwise be burdened or that state courts might provide a more convenient forum—although both might well be true—but because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature. The Supremacy Clause makes those laws "the supreme Law of the Land," and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure.

*Howlett*, 496 U.S. at 367, 110 S.Ct. at 2438. We do not read this quotation as inconsistent with our holding in *Linderkamp*. Although the Court stresses that federal law is to be given force and effect in state courts, *see Kristensen v. Strinden*, 343 N.W.2d 67, 69–71 (N.D.1983), we do not believe the Court intended to suggest that the remedy under § 1983 has lost its federal character. The Court has repeatedly stated that § 1983 is "a uniquely federal remedy." *See, e.g., Hardin v. Straub*, 490 U.S. 536, 539 n. 5, 109 S.Ct. 1998, 2001 n. 5,

104 L.Ed.2d 582 (1989); *Felder v. Casey*, 487 U.S. 131, 139, 108 S.Ct. 2302, 2307, 101 L.Ed.2d 123 (1988); *Wilson v. Garcia*, 471 U.S. 261, 271–272, 105 S.Ct. 1938, 1944–45, 85 L.Ed.2d 254 (1985). The Court is merely saying that federal law is binding on the states, and that state courts do not have discretion to refuse to hear federal causes of action.

When the above quote from *Howlett* is read within the context of the entire opinion, it becomes apparent that the point the Court is making is that the Supremacy Clause precludes state courts from applying state procedural rules that would necessarily produce a different result than if the case had been brought in federal court. As the Court later explains:

> The elements of, and the defenses to, a federal cause of action are defined by federal law.... A State may not, by statute or common law, create a cause of action under § 1983 against an entity whom Congress has not subjected to liability.... Since this Court has construed the word "person" in § 1983 to exclude States, neither a federal court nor a state court may entertain a § 1983 action against such a defendant. Conversely, since the Court has held that municipal corporations and similar governmental entities are "persons," ... a state court entertaining a § 1983 action must adhere to that interpretation.

*Howlett*, 496 U.S. at 375–376, 110 S.Ct. at 2442–2443 (citations omitted). This makes clear that, still, neither a federal court nor a state court may entertain a § 1983 action against the state itself.

Rather, the Court's ruling in *Howlett* simply reiterates the preference for intrastate uniformity expressed in *Felder v. Casey* and *Wilson v. Garcia*. *Felder* is illus-

---

1. In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 2311 n. 10, 105 L.Ed.2d 45 (1989), the Supreme Court clarified that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" The parties have not raised this issue, and we express no opinion whether an action against "[t]he State of North Dakota, by and through its Tax Commissioner,"

is properly designated as an action for injunctive relief against a state official in her official capacity. Because we conclude that Quill's § 1983 action is not cognizable in state court under *Linderkamp*, we find it unnecessary to address this issue. *See Blatchford v. Native Village of Noatak*, —— U.S. ——, ——, 111 S.Ct. 2578, 2584, 115 L.Ed.2d 686 (1991) (Tax Injunction Act bars official-capacity suits to enjoin state taxation in federal court).

trative. In *Felder*, the Court held that a plaintiff was not required to comply with Wisconsin's notice-of-claim statute as a prerequisite to bringing his § 1983 action in state court. The Court noted that application of the statute would often be outcome-determinative, creating a different result depending upon whether suit is brought in state or federal court. *Felder*, 487 U.S. at 151, 108 S.Ct. at 2313. The Court stressed that it was the intent of Congress that § 1983 would be applied uniformly within each state:

> Finally, in *Wilson*, we characterized § 1983 suits as claims for personal injuries because such an approach ensured that the same limitations period would govern all § 1983 actions brought in any given State, and thus comported with Congress' desire that the federal civil rights laws be given a uniform application within each State.... A law that predictably alters the outcome of § 1983 claims depending solely on whether they are brought in state or federal court within the same State is obviously inconsistent with this federal interest in intrastate uniformity.

*Felder*, 487 U.S. at 152–153, 108 S.Ct. at 2314 (citation omitted). The federal interest in intrastate uniformity does not require recognition of a § 1983 claim in a state court when it would not be recognized in a federal court.

The result in *Linderkamp* is entirely consistent with the Congressional desire for uniform intrastate application. Unlike the Wisconsin notice-of-claim statute, which precluded certain plaintiffs from bringing in state court a § 1983 action that could have been brought in federal court, *Linderkamp* preserves uniformity of results in § 1983 actions, whether brought in state or federal court within North Dakota. Under

the rationale of *Howlett*, *Felder*, and *Wilson*, application of a state rule that fosters intrastate uniformity of results is consistent with Congressional intent and does not violate the Supremacy Clause.

We also remark that the result urged by Quill would reopen the "anomaly ... that a State might be forced to entertain in its own courts suits from which it was immune in federal court," which the *Howlett* Court concluded had been "fully met" by *Will*. *Howlett*, 496 U.S. at 365, 110 S.Ct. at 2437. We find nothing in *Howlett* to indicate that the Court intended to require state courts to entertain § 1983 actions to enjoin assessment, levy, or collection of state taxes, when those actions could not be brought in federal court.

Several courts have held that *Howlett* does not require state courts to entertain § 1983 actions that would be barred in federal court by the Tax Injunction Act. In *L.L. Bean, Inc. v. Bracey*, 817 S.W.2d 292 (Tenn.1991), a mail-order company sought declaratory and injunctive relief under § 1983. The court concluded that "the United States Supreme Court did not hold in *Howlett v. Rose* that a state court must adjudicate a claim made under § 1983 that a federal court would not be required (or permitted) to entertain." *L.L. Bean*, 817 S.W.2d at 296. The court followed *Linderkamp* and other similar cases to conclude that its state courts were not required to entertain § 1983 actions that were barred in federal court by the Tax Injunction Act.[2]

In *Greenwich Township v. Murtagh*, 144 Pa.Commw. 624, 601 A.2d 1352, *appeal granted*, 530 Pa. 635, 606 A.2d 904 (1992), taxpayers brought a § 1983 action in state court challenging assessment of real property taxes. The court joined the "consensus of other state courts" holding that a

**2.** In *Bloomingdale's By Mail Ltd. v. Huddleston*, 848 S.W.2d 52 (Tenn.1992), the Supreme Court of Tennessee recently reaffirmed its holding in *L.L. Bean*, stating that *"Howlett v. Rose* is not inconsistent with the Tennessee Supreme Court's decision in *L.L. Bean, Inc. v. Bracey."* *Bloomingdale's*, 848 S.W.2d at 54. The court's per curiam opinion then distinguishes *L.L. Bean* on the ground that, unlike the taxpayer in *L.L. Bean*, the taxpayer in *Bloomingdale's* had actual-

ly received an assessment. The court then inexplicably concluded that the taxpayer was entitled to § 1983 relief, including attorney's fees under § 1988, even though the taxpayer had never requested relief under §§ 1983 and 1988. To the extent that *Bloomingdale's* reaffirms *L.L. Bean* and indicates that a § 1983 action is improper when no assessment of taxes has yet been made, it supports our decision in this case.

§ 1983 action will not be entertained in state courts to challenge state tax administration if an adequate state remedy is available. *Greenwich Township*, 601 A.2d at 1356. The court noted that the Supreme Court's decision in *Howlett* was premised upon an attempt "to assure that the outcome of federal causes of action would be the same, regardless if decided in a state or federal forum." *Greenwich Township*, 601 A.2d at 1355. Similarly, in *Hufford v. Rodgers*, 912 F.2d 1338, 1341 n. 1 (11th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1312, 113 L.Ed.2d 246 (1991), the court noted that in *Howlett* the Supreme Court had "clarified that, even in state court, local entities remain subject to suit from federal claims to the same extent as they would be in federal court."

We agree with the result and rationale of these cases. We do not read *Howlett* and earlier Supreme Court cases to require state courts to entertain § 1983 actions challenging state tax administration when such actions would be barred in federal court. *Howlett, Felder,* and *Wilson* recognize that Congress intended that § 1983 be given a uniform application within each state. Accordingly, we read those cases as holding only that state rules that are outcome-determinative, in a manner inconsistent with federal law, will be violative of the Supremacy Clause. Application of the *Linderkamp* holding in this case to preclude a § 1983 action in state court that would be barred in federal court by the Tax Injunction Act is consistent with *Howlett, Felder,* and *Wilson,* and creates a uniform result in state and federal court.

One additional factor supports the conclusion we reach. Although the *Linderkamp* rule was created by a state court, it was based exclusively upon federal law and policy. As we noted in *Linderkamp*, 397 N.W.2d at 79–80:

In determining whether to impose similar restrictions on § 1983 actions brought in state court, we note the policy underpinnings of the Tax Injunction Act. Although federalism concerns are an important part of the Tax Injunction Act's legislative history, additional factors underl[ie] the statute's enactment, including a general recognition that state taxation embraces uniquely sensitive local concerns and that the greatest possible deference will be paid to state remedial schemes. As noted by Justice Brennan in his opinion concurring in part and dissenting in part in *Perez v. Ledesma,* 401 U.S. 82, 127, 91 S.Ct. 674, 698, 27 L.Ed.2d 701, 730, n. 17 (1971):

"The special reasons justifying the policy of federal non-interference with state tax collection are obvious. The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law."

*See also Geo. F. Alger Co. v. Peck,* 74 S.Ct. 605, 607, 98 L.Ed. 1148, 1150 (1954) (Reed, J., in-chambers opinion) ("The Congress by § 1341 left the burden on the taxpayers to follow the required state procedure rather than to determine the federal issues primarily in the federal courts").

Recognition that the proscriptions of the Tax Injunction Act are based at least in part upon deference to state remedial schemes leads to the conclusion that a state court § 1983 action, which applies a federal remedial statute for alleged violations of federally-created rights, is no less of a burden upon the state remedial scheme than would be a § 1983 action brought in federal court. This concept has been recognized, albeit in a somewhat different context, by the United States Court of Appeals for the Seventh Circuit in *LaSalle National Bank v. Roswell,* 604 F.2d 530, 538–539 (7th Cir. 1979), *rev'd on other grounds,* 450 U.S.

503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981):

> "Defendants' position leads to the scenario of a state court adjudicating a cause of action and formulating a remedy—and throughout required to apply federal law. It would be difficult to say that this is less of an incursion into state autonomy than an action in federal court."

We also note the Supreme Court's observation in *Fair Assessment in Real Estate Association, Inc. v. McNary*, 454 U.S. 100, 116, 102 S.Ct. 177, 186, 70 L.Ed.2d 271 (1981), that taxpayers may not challenge the validity of state tax systems through a § 1983 action in federal court, but "must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete." The Wisconsin Supreme Court succinctly analyzed *McNary* in *Hogan v. Musolf*, 163 Wis.2d 1, 471 N.W.2d 216, 222 (1991):

> The Supreme Court's primary interest in *McNary* was to avoid interference with state taxing practices by permitting states to have the opportunity to apply their remedies and procedures in tax matters before federal remedies are sought by a sec. 1983 action. We understand *McNary* as indicating that the Court is equally concerned that tax challenges be conducted according to state remedies as it is that they be conducted in a state forum. It would be no less disruptive of the state's internal economy and administrative tax procedures for a state court to act under sec. 1983 and suspend the usual tax collection and refund procedures of the state than it would be for a federal court to do so. In addition, regardless of which court interferes with the state's fiscal operations, tax officials would be improperly denied the opportunity to rectify any alleged impropriety before being subject to a sec. 1983 action. Accordingly, we conclude that the policies which motivated the Court's decision in *McNary* are equally

applicable to sec. 1983 actions in state court.

We agree.

Finally, Quill suggested at oral argument that the Supreme Court's decision in *Dennis v. Higgins*, 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991), supports its assertion that a state court may be required to entertain a § 1983 action challenging state taxation. In *Dennis*, motor carriers challenged Nebraska's imposition of retaliatory taxes and fees on out-of-state carriers. They sued in state court seeking declaratory and injunctive relief, asserted a § 1983 claim, and sought attorney's fees under § 1988. The trial court found that the taxes and fees violated the Commerce Clause, granted injunctive relief, and awarded attorney's fees under the "common fund" doctrine. The court dismissed the § 1983 claim. On appeal, the Supreme Court of Nebraska held that the Commerce Clause did not establish individual rights and could not provide the basis for a § 1983 claim. *Dennis v. State*, 234 Neb. 427, 451 N.W.2d 676 (1990). The court also reversed the award of attorney's fees under the "common fund" doctrine. The United States Supreme Court reversed, resolving a division of authority on the issue, holding that the Commerce Clause confers "rights" within the meaning of § 1983. *Dennis*, 498 U.S. at 445–46, 111 S.Ct. at 870.

Quill asserts that *Dennis* "makes no sense" unless the Supreme Court viewed state courts as having authority to decide § 1983 tax challenges. However, the only issue addressed by the Supreme Court was "whether suits for violations of the Commerce Clause may be brought under ... § 1983." *Dennis*, 498 U.S. at 440, 111 S.Ct. at 867. As noted in *Greenwich Township*, 601 A.2d at 1356–1357 n. 11, "the majority in *Dennis* never discusses whether the state court had subject matter jurisdiction or whether there was a full and complete remedy at state law, apparently because those issues were not raised and because of the unique procedural history of that case." [3]

**3.** Although the majority did not mention the numerous unresolved questions about state court jurisdiction of § 1983 tax challenges, Justice Kennedy's dissent did:

We read no "implied holding" into the Supreme Court's opinion in *Dennis*. Under *Howlett* and other contemporary Supreme Court cases, state courts clearly have concurrent jurisdiction over § 1983 claims. The Tax Injunction Act does not, on its face, restrict state court jurisdiction. A question arises about state court jurisdiction over a § 1983 tax challenge only when the state adopts a rule of law limiting jurisdiction to correspond to federal court jurisdiction. The Supreme Court of Nebraska never reached that question, because it concluded that the Commerce Clause did not confer individual rights. Because the Supreme Court was not presented with any question about a state limitation upon jurisdiction of a § 1983 tax challenge, the Court's opinion in *Dennis* should not be read to "impliedly hold" that such limitations violate the Supremacy Clause.

We hold that Quill's § 1983 claim was properly dismissed in accordance with our holding in *Linderkamp*. Accordingly, Quill is not entitled to recover its attorney's fees under § 1988.

VANDE WALLE, C.J., LEVINE, J., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

Surrogate Judge RALPH J. ERICKSTAD was Chief Justice at the time this case was heard and served as surrogate judge for this case pursuant to NDCC 27–17–03.

Justice J. PHILIP JOHNSON, who was a member of the Court when this case was heard, did not participate in this decision.

Justice NEUMANN and Justice SANDSTROM, not being members of the Court when this case was heard, did not participate in this decision.

Today's decision raises far more questions about the proper conduct of challenges to the validity of state taxation than it answers. The Tax Injunction Act, 28 U.S.C. § 1341, prevents any attempt in federal court to "enjoin, suspend or restrain" assessment or collection of a state tax, so long as "a plain, speedy and efficient remedy may be had in the courts of such State." The principle of comity likewise prevents a federal court from entertaining any action for damages under § 1983 to redress allegedly unconstitutional state taxation.... Relying upon the "overriding interests of the state in an efficient, expeditious and nondisruptive resolution of ... tax disputes," ... state courts have refused to permit plaintiffs to proceed under § 1983 where there exists a complete remedy under state law.... These questions now become of paramount importance, as we risk destruction of state fiscal integrity in a manner which may require congressional correction.
*Dennis*, 498 U.S. at 464–65, 111 S.Ct. at 880 (Kennedy, J., dissenting) (citations omitted).