899 So.2d 1074 (2005)
Janet MAGGIO, Petitioner,
v.
FLORIDA DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY, etc., Respondent.
No. SC04-755.
Supreme Court of Florida.
March 24, 2005.
*1075 Gary Lee Printy, Tallahassee, FL, for Petitioner.
Nancy A. Chad and Jay P. Lechner of Zinober and McCrea, P.A., Tampa, FL, for Respondent.
John C. Davis, Tallahassee, Florida on behalf of National Employment Lawyers Association, Florida Chapter; and F. Damon Kitchen and Jack R. Wallace of Constangy, Brooks and Smith, LLC, Jacksonville, FL, on behalf of Florida Department of Financial Services, for Amici Curiae.
PARIENTE, C.J.
We have for review Maggio v. Department of Labor & Employment Security, 869 So.2d 690 (Fla. 2d DCA 2004), in which the Second District Court of Appeal certified the following question as a matter of great public importance:
ARE CLAIMS FILED PURSUANT TO THE FLORIDA CIVIL RIGHTS ACT OF 1992 TORT CLAIMS AND THUS SUBJECT TO THE PRESUIT NOTICE REQUIREMENTS OF SECTION 768.28(6), FLORIDA STATUTES (2003)?
Id. at 692. We have jurisdiction.[1]
We rephrase the question as follows:
ARE CLAIMS FILED PURSUANT TO THE FLORIDA CIVIL RIGHTS ACT OF 1992 SUBJECT TO THE PRESUIT NOTICE REQUIREMENTS *1076 OF SECTION 768.28(6), FLORIDA STATUTES (2003)?
We answer the rephrased question in the negative and hold that claims filed pursuant to the Florida Civil Rights Act of 1992 are not subject to the presuit notice requirements of section 768.28(6).

I. FACTS AND PROCEDURAL HISTORY
Janet Maggio, who is legally blind, was employed by the State of Florida Department of Labor and Employment Security and its successor agency, the State of Florida Agency for Workforce Innovation (collectively the "DLES"), as a customer service specialist from April 15, 1985, until her resignation on May 15, 1998. In compliance with the Florida Civil Rights Act of 1992, Maggio filed a charge of discrimination with the federal Equal Employment Opportunity Commission (EEOC). The EEOC furnished a copy of the charge to the Florida Commission on Human Relations (FCHR). After failing to receive a reasonable cause determination from the FCHR, Maggio filed suit against the DLES. In her complaint, filed December 19, 2001, Maggio alleged that the DLES had unlawfully discriminated against her on the basis of her handicap in violation of the Act. The DLES filed a motion to dismiss for Maggio's noncompliance with the statutory presuit notice requirements of section 768.28(6).
The trial court found that Maggio's claim was a tort claim, and thus subject to the presuit notice requirements delineated in section 768.28(6). The trial court also found that it was impossible at that point for Maggio to comply with these requirements because the three-year period for notifying the State of a claim against it had expired.[2] Therefore, the trial court dismissed Maggio's complaint with prejudice.
On appeal, the Second District affirmed. Persuaded by the analysis and reasoning in Scott v. Otis Elevator Co., 572 So.2d 902 (Fla.1990) (Scott II), and Bearelly v. State Department of Corrections, No. 63-2001-CA-046, 2002 WL 982429 (Fla. 8th Cir.Ct. Apr. 10, 2002), the Second District concluded that Maggio's claim was a tort claim because it arose from "personal rights that are granted and guaranteed by legislative act," and existed independent of the employment contract. Maggio, 869 So.2d at 691. However, because there was no controlling precedent specifically holding that disability discrimination claims brought pursuant to the Act are subject to the presuit notice requirements of section 768.28(6), the Second District certified the question to this Court as a matter of great public importance.

II. ANALYSIS
To answer the rephrased question, we must determine whether the Legislature intended claims filed under the Florida Civil Rights Act to be subject to the presuit notice requirements of section 768.28(6). Statutory construction is a question of law subject to de novo review. BellSouth Telecomms., Inc. v. Meeks, 863 So.2d 287, 289 (Fla.2003).
"When construing a statutory provision, legislative intent is the polestar that guides" the Court's inquiry. State v. Rife, 789 So.2d 288, 292 (Fla.2001) (quoting McLaughlin v. State, 721 So.2d 1170, 1172 (Fla.1998)). Legislative intent is determined *1077 primarily from the language of the statute. See id. Thus, we look first to the language used in the Act. See Delta Property Mgmt., Inc., v. Profile Invs., Inc., 875 So.2d 443, 447 (Fla.2004); Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla. 2000).
The Florida Civil Rights Act is a remedial statute that the Legislature has expressly provided is to be "liberally construed to further the general purposes" of the Act and the particular provisions involved. § 760.01(3), Fla. Stat. (2003); see also Woodham v. Blue Cross Blue Shield of Florida, Inc., 829 So.2d 891, 897 (Fla. 2002) (stating that "we are guided by the stated statutory purpose of liberally construing the [Act] in favor of a remedy for those who are victims of discrimination, and the companion principle that requires us to narrowly construe statutory provisions that restrict access to the courts"); Joshua, 768 So.2d at 435 ("We are guided by the Legislature's stated purpose for enacting ... chapter [760] and its directive that the Act be liberally construed...."). Under certain circumstances, the Act creates a statutory right to maintain a civil cause of action when a violation occurs. However, the Act first requires that the claimant comply with a set of presuit administrative procedures. See § 760.11(1), Fla. Stat. (2003).[3] Further, although a claimant who brings a civil action may receive compensatory damages, section 760.11(5) expressly states that the total recovery against the State cannot "exceed the limitation as set forth in s. 768.28(5)."
The question in this case is whether the Legislature intended a claimant who is suing a state agency for a civil rights violation to comply not only with the administrative presuit requirements of section 760.11, but also with the notice requirements of section 768.28(6). Section 768.28 is titled, "Waiver of sovereign immunity in tort actions; recovery limits; limitation on attorney fees; statute of limitations; *1078 exclusions; indemnification; risk management programs." Section 768.28(6)(a) sets forth the presuit notice procedures that a plaintiff must follow in order to benefit from the State's waiver of sovereign immunity. Subsection (6)(a) provides:
An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing; except that if such claim is for contribution pursuant to s. 768.31, it must be so presented within 6 months after the judgment against the tortfeasor seeking contribution has become final by lapse of time for appeal or after appellate review or, if there is no such judgment, within 6 months after the tortfeasor seeking contribution has either discharged the common liability by payment or agreed, while the action is pending against her or him, to discharge the common liability.
DLES asserts that the Florida Civil Rights Act should be read in pari materia with section 768.28 to impose both sets of presuit requirements. Under this principle of statutory construction, when two statutes relate to the same thing or to the same subject or object, the statutes are construed together so as to harmonize both statutes and give effect to the Legislature's intent. See McGhee v. Volusia County, 679 So.2d 729, 730 n. 1 (Fla.1996) (the doctrine of in pari materia requires courts to construe related statutes together so that they are harmonized).
Three important aspects of the Florida Civil Rights Act compel the conclusion that the Act is a stand-alone statutory scheme specifically designed to address civil rights violations regardless of whether the State is a named defendant. First, the State's waiver of sovereign immunity for civil rights claims derives from the Florida Civil Rights Act, not from the waiver of sovereign immunity contained in section 768.28. Second, the inclusion of detailed presuit requirements within the Act, which serve to place the State on notice of the alleged violation, suggests that the Legislature did not intend to require compliance with an additional unreferenced notice provision. And third, the express reference in the Act to section 768.28(5), but not to section 768.28(6), supports the conclusion that the Legislature did not intend that the provisions of section 768.28(6) apply to the Act. We discuss each of these aspects of the Act in turn.
First, the Florida Civil Rights Act contains a waiver of sovereign immunity independent of the waiver contained in section 768.28. Section 760.10(1)(a), Florida Statutes (2003), provides that it is an unlawful employment practice for an employer to "discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status." Under the Act, the term "employer" is defined to mean "any person employing 15 or more employees ... and any agent of such person." § 760.02(7), Fla. Stat. (2003) (emphasis added). The Act further defines "person" to include "the state; or any governmental entity or agency." § 760.02(6), Fla. Stat. (2003). The inclusion of the State in the definition of "person" and, hence, "employer" evidences a clear, specific, and unequivocal intent to waive sovereign immunity. See *1079 Klonis v. State Dep't of Revenue, 766 So.2d 1186, 1190 (Fla. 1st DCA 2000) (stating that "the Florida Legislature intended to waive, and did waive, the State of Florida's sovereign immunity under Chapter 760"); Jones v. Brummer, 766 So.2d 1107, 1108 (Fla. 3d DCA 2000) (determining that the Act "evidence[s] legislative intent that civil actions ... under [the Act] be prosecuted against the state"); cf. Hill v. Dep't of Corrections, 513 So.2d 129, 133 (Fla.1987) (concluding that section 768.28 did not waive the State's sovereign immunity for federal civil rights claims brought pursuant to section 1983 of Title 42, United States Code).
Second, the Act sets forth its own administrative notice requirements that operate as a prerequisite to the State waiving its sovereign immunity under the Act. See § 760.11, Fla. Stat. (2003). Specifically, before maintaining a civil action the claimant is required to file a complaint with the FCHR or EEOC "within 365 days of the alleged violation, naming the employer ... responsible for the violation and describing the violation." Id. The complaint must "contain a short and plain statement of the facts describing the violation and the relief sought." Id.
The FCHR is required to send a copy of the complaint to the named defendant within five days of the complaint being filed. See id. The FCHR must also "investigate the allegations in the complaint" and "determine if there is reasonable cause to believe that [a] discriminatory practice has occurred in violation of the [Act]." § 760.11(3), Fla. Stat. (2003). If the FCHR either determines that reasonable cause exists to believe that a discriminatory practice has occurred or fails to make a reasonable cause determination, the claimant has the right to either bring a civil action or request an administrative hearing under section 760.11(4), Florida Statutes (2003). See § 760.11(4); § 760.11(8), Fla. Stat. (2003) (providing that if the FCHR fails to make a reasonable cause determination within 180 days of the filing of the complaint, the claimant "may proceed under subsection (4)"). Section 760.11(4) provides in pertinent part:
(4) In the event that the commission determines that there is reasonable cause to believe that a discriminatory practice has occurred in violation of the Florida Civil Rights Act of 1992, the aggrieved person may either:
(a) Bring a civil action against the person named in the complaint in any court of competent jurisdiction; or
(b) Request an administrative hearing under ss. 120.569 and 120.57.
§ 760.11(4), Fla. Stat. (2003).
The two procedures set forth in subsection (4) are the exclusive procedures available to the claimant pursuant to the Act. See id. Neither of these procedures incorporates the presuit notice requirements contained in section 768.28(6). The presuit requirements in section 760.11 mandate that the State receive notification of the claim within approximately one year of the alleged violation and require the FCHR to investigate the allegations of the complaint. The notice and investigation must both take place before the claimant is even permitted to file a lawsuit. Given these specific presuit requirements, we see no basis for concluding that the Legislature also intended a civil rights claimant to be bound by the notice provisions of section 768.28(6), which is a broader provision applying to tort actions that requires notice within three years of the date the claim accrues. Moreover, a "`specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms.'" Stoletz v. State, 875 So.2d 572, 575 (Fla.2004) (quoting McKendry v. State, *1080 641 So.2d 45, 46 (Fla.1994)). Although the two statutory notice requirements do not expressly conflict, we conclude that the existence of the detailed notice requirements in the Act, which apply to a specific cause of action, should control over the general notice provisions in section 768.28(6).
Third, and perhaps most telling, it is clear from the express reference to section 768.28(5) that the Legislature was aware of the provisions of section 768.28 when it drafted the Florida Civil Rights Act. The DLES suggests that the reference to section 768.28(5) in the Act demonstrates a legislative intent to apply all of the provisions in section 768.28, namely subsection (6), to the Act. We discern precisely the opposite conclusion by the Legislature's reference to subsection (5).
If the Legislature intended all the provisions of section 768.28 to apply to the Florida Civil Rights Act, there would have been no reason to refer only to subsection (5). In fact, any reference to subsection (5) would have been superfluous. By specifically referring only to subsection (5), the Legislature has evidenced its intent to apply only the damages limitations of section 768.28 to the Act. Cf. Young v. Progressive Southeastern Ins. Co., 753 So.2d 80, 85 (Fla.2000) (under the principle of expressio unius est exclusio alterius, the mention of one thing in a statute implies the exclusion of another); Gay v. Singletary, 700 So.2d 1220, 1221 (Fla.1997) ("[W]hen a law expressly describes the particular situation in which something should apply, an inference must be drawn that what is not included by specific reference was intended to be omitted or excluded.").
The express reference to section 768.28(5) in the Act, considered together with the Legislature's failure to refer to section 768.28(6), the Act's independent waiver of sovereign immunity, and the detailed presuit requirements contained in the Act, support a construction that section 768.28(6) does not apply to actions brought under the Act. We thus hold that when the Legislature enacted the Florida Civil Rights Act, it did not intend claimants to comply with the presuit notice requirements of section 768.28(6).
This conclusion is bolstered by the Legislature's statement of intent that the provisions of the Act are to be "liberally construed to further the general purposes" of the Act. § 760.01(3), Fla. Stat. (2003). As we have stated, the Act already has substantial presuit requirements with which a claimant is required to comply. Imposing additional presuit requirements not set forth within the Florida Civil Rights Act itself would hinder rather than further these remedial purposes because such an interpretation would not "preserve and promote access to the remedy intended by the Legislature." Joshua, 768 So.2d at 435.
We distinguish Scott II and Bearelly, the two cases relied on by the Second District. See Maggio, 869 So.2d at 691-92. The circuit court in Bearelly found that an action filed pursuant to the Florida Civil Rights Act is a tort claim that is subject to section 768.28(6) based on the decision reached in Scott II. See 2002 WL 982429 at *1. Scott II involved a retaliatory discharge claim brought under an entirely different statute, section 440.205, Florida Statutes (1979), a provision of the Workers' Compensation Law. In our previous decision in Scott v. Otis Elevator Co., 524 So.2d 642, 643 (Fla.1988) (Scott I), we stated that retaliatory discharge is a statutory cause of action that is "tortious in nature." In Scott II, we then held that damages for emotional distress were available because the claim was tortious in nature. See 572 So.2d at 903. However, *1081 neither of these cases involved the issue of whether a retaliatory discharge claim brought under section 440.205 is subject to the presuit notice requirements of section 768.28. Thus, they have no precedential value on the issue before us.[4]
Further, in contrast to the Florida Civil Rights Act, the retaliatory discharge provision of the Workers' Compensation Law has no presuit notice requirements, no designated forum for adjudicating claims, no provision for the type of relief to which an aggrieved party is entitled, and no reference to any portion of section 768.28. See § 440.205, Fla. Stat. (2003). Therefore, we conclude that the Second District erred in relying on the reasoning in Bearelly and cases that interpreted section 440.205 to hold that claims filed under the Florida Civil Rights Act are subject to section 768.28(6).
Finally, the Second District reasoned that the key to determining whether section 768.28(6) applied was whether the statutory cause of action for a civil rights violation could be considered a "tort." However, we have previously stated that the "sole purpose [of the enactment of section 768.28] was to waive [sovereign] immunity[,] which [previously] prevented recovery for breaches of existing common law duties of care." Trianon Park Condominium Ass'n, Inc. v. City of Hialeah, 468 So.2d 912, 917 (Fla.1985) (emphasis added); see also Hill, 513 So.2d at 133 (agreeing with a federal court's conclusion that section 768.28 "was limited to traditional torts; specifically, those in which the state would be liable if it were a private person"). Under this narrow reading, only those claimants bringing common law tort claims would be subject to the presuit notice requirements of section 768.28(6). However, because we have determined that the Legislature did not intend for civil rights claimants to be required to comply with the presuit notice requirements of section 768.28(6) in addition to the presuit requirements of the Act itself, we decline to reach the broader issue of whether the notice requirements of section 768.28(6) are applicable only to common law torts.[5]

III. CONCLUSION
For the foregoing reasons, we conclude that claims filed under the Florida *1082 Civil Rights Act are not subject to the presuit notice requirements of section 768.28(6). Accordingly, we answer the rephrased question in the negative and quash the Second District's decision.
It is so ordered.
WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] See art. V, § 3(b)(4), Fla. Const.
[2] Section 768.28(6)(a), Florida Statutes (2003), provides in pertinent part that "[a]n action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim ... within 3 years after such claim accrues."
[3] Section 760.11(1) provides in full:

Any person aggrieved by a violation of ss. 760.01-760.10 may file a complaint with the commission [FCHR] within 365 days of the alleged violation, naming the employer, employment agency, labor organization, or joint labor-management committee, or, in the case of an alleged violation of s. 760.10(5), the person responsible for the violation and describing the violation. Any person aggrieved by a violation of s. 509.092 may file a complaint with the commission within 365 days of the alleged violation naming the person responsible for the violation and describing the violation. The commission, a commissioner, or the Attorney General may in like manner file such a complaint. On the same day the complaint is filed with the commission, the commission shall clearly stamp on the face of the complaint the date the complaint was filed with the commission. In lieu of filing the complaint with the commission, a complaint under this section may be filed with the federal Equal Employment Opportunity Commission or with any unit of government of the state which is a fair-employment-practice agency under 29 C.F.R. ss. 1601.70-1601.80. If the date the complaint is filed is clearly stamped on the face of the complaint, that date is the date of filing. The date the complaint is filed with the commission for purposes of this section is the earliest date of filing with the Equal Employment Opportunity Commission, the fair-employment-practice agency, or the commission. The complaint shall contain a short and plain statement of the facts describing the violation and the relief sought. The commission may require additional information to be in the complaint. The commission, within 5 days of the complaint being filed, shall by registered mail send a copy of the complaint to the person who allegedly committed the violation. The person who allegedly committed the violation may file an answer to the complaint within 25 days of the date the complaint was filed with the commission. Any answer filed shall be mailed to the aggrieved person by the person filing the answer. Both the complaint and the answer shall be verified.
[4] We recognize that the First and Third District Courts of Appeal have concluded that because a retaliatory discharge claim brought pursuant to section 440.205 is tortious in nature under Scott I, it is subject to the presuit notice requirements of section 768.28. See Osten v. City of Homestead, 757 So.2d 1243, 1244 (Fla. 3d DCA 2000); Kelley v. Jackson County Tax Collector, 745 So.2d 1040, 1040-41 (Fla. 1st DCA 1999). We do not determine the correctness of these decisions because that issue is not before us.
[5] We also reject as inapposite Menendez v. North Broward Hospital District, 537 So.2d 89 (Fla. 1988), on which the DLES relies for the broad proposition that when the State is the defendant, the requirements of section 768.28(6) always apply. The DLES asserts that the existence of the presuit requirements in the Act is irrelevant in determining whether section 768.28(6) applies because under Menendez, a claimant bringing a medical malpractice claim is required to comply with section 768.28(6), despite the fact that section 766.106, Florida Statutes (2004), also provides presuit procedures for such claims. However, the issue in Menendez was whether the requirements of section 768.28(6) could be waived, not whether that section was applicable to medical malpractice claims. See 537 So.2d at 90. In addition, we could not have considered the effect of the medical malpractice presuit procedures contained in section 766.106 because those procedures were not enacted until 1985, which was five years after Menendez filed his medical malpractice action. See ch. 85-175, § 14, Laws of Fla. Moreover, unlike causes of action that are solely the creature of statute, medical malpractice actions existed as common law torts and thus were covered under the general waiver of sovereign immunity in section 768.28(6).