**LADD PETROLEUM CORPORATION, Appellant,**

v.

**OKLAHOMA TAX COMMISSION, Appellee.**

No. 62761.

Supreme Court of Oklahoma.

Jan. 17, 1989.

---

* Effective January 1, 1989.

James M. Chaney, Dan T. Foley, Kirk & Chaney, Oklahoma City, for appellant.

J. Lawrence Blankenship, Gen. Counsel, Donna E. Cox, Oklahoma City, for appellee.

SUMMERS, Justice.

Ladd Petroleum Corporation filed suit in District Court alleging that the Oklahoma Tax Commission's assessment of additional gross production, petroleum excise, and conservation excise taxes violated its rights under the fourteenth amendment of the United States Constitution. At non-jury trial Ladd presented its evidence and the Commission demurred thereto. The court sustained the Commission's demurrer, ruling that Ladd had failed to exhaust its administrative remedies and had failed to invoke the court's subject matter jurisdiction. Ladd appeals. We find plaintiff's evidence sufficient to withstand a demurrer, and accordingly reverse the order of the district court.

For the second time [1] Ladd contests assessment of additional taxes based upon Ladd's activities as both producer and purchaser of casinghead gas in the North East Enid Field in Garfield County, Oklahoma. The field consists, for purposes of this action, of sixty-nine producing wells. Of those wells, Ladd or its predecessors [2] (hereinafter referred to collectively as Ladd) operate fifty-six of the wells, and various outside producers operate the remaining thirteen wells.

Each of the producing wells feeds into a gathering system, and the volume of casinghead gas is measured by orifice meters at the entrance to the gathering system. Ladd owns the gathering system. Ladd transports the gas to a processing plant where certain liquids are extracted from the casinghead (or "wet") gas and sold. Following extraction and sale of the liquifiable hydrocarbons, the remaining residue (or "dry") gas is sold.

Various contracts govern these sales. The first contract defines the terms of the sale of casinghead gas to Ladd at the meter to the gathering system, and provides that transfer of ownership of all casinghead gas occurs at the entrance to Ladd's gathering system. Each of the thirteen outside producers executed identical contracts with Ladd in this regard. Ladd, acting as producer also executed a contract with Ladd as purchaser, which contract is identical to those with the other producers. Under this contract, Ladd purchases 100% of the casinghead gas from these sixty-nine

1. In 1980, we decided *Ladd Petroleum Corp. v. Oklahoma Tax Commission,* 619 P.2d 602, in which Ladd objected to similar assessments. We could not reach the gravamen of Ladd's complaint because Ladd failed to satisfy the thirty day requirement for lodging its protest under 68 O.S.Supp.1979 § 226(b). That section provides:

   "Within thirty (30) days from the date of mailing to the taxpayer of the order, ruling or finding of the Tax Commission, any such taxpayer shall pay the tax to the Tax Commission, and at the time of making such payment shall give notice to the Tax Commission of his intention to file suit for recovery of such tax......" .

2. For purposes of this action, Livingston Oil Company and LVO Corporation, both predecessors to Ladd may be treated as the same entity.

wells, and pays the producers 95%[3] of the proceeds of the sale of the residue gas after first deducting a $.02/MCF gathering, transportation and processing fee. The amounts returned to the producers are controlled by the price paid by the purchaser (Cities Service) for the dry gas sold after processing. Ladd's bookkeeping reflects that it "pays" itself in accordance with the contract at the 95% rate.

In addition to the purchase contract previously described, Ladd contracted with Champlin Refining, as operator of the processing plant. This contract provides that Champlin pay Ladd $.04/MCF for transporting the gas to its plant, $.03/MCF for the right to extract the liquids, plus a percentage of the gross proceeds Champlin receives for the sale of the liquids extracted, which percentage is computed pursuant to a formula set out in the contract.

This suit is concerned with additional tax assessments made for the tax years 1978 through 1981. During the years at issue, Ladd reported its gross production based on the terms of the purchase contracts in which the gross value for purposes of 68 O.S. 1981 § 1001 was determined by the sale price of residue gas after processing. Ladd did not report as gross value the amounts received from Champlin under the liquids extraction contract.

The Commission assessed additional taxes against only the fifty-six wells operated by Ladd.[4] These assessments included gross production tax in the amount of $279,259.56, additional petroleum excise tax in the amount of $3,390.07[5] and additional conservation excise tax in the amount of $57,614.05.[6] These assessments taxed as

gross value 100% of the proceeds of the sale of residue gas and 100% of the proceeds Ladd received from Champlin under the liquids extraction contract. No additional assessments were made against the thirteen outside producers, whose taxes were computed pursuant to the 95% contract formula.

The Commission's conservation excise tax assessment was based not on the volume of residue gas, as were the gross production and petroleum excise assessments, but on the total volume of casinghead gas as measured by the orifice meters at the entrance to gathering system. Ladd contests the additional assessments.

Rather than lodging an administrative protest before the Commission under § 221 et seq, of title sixty-eight of the Oklahoma Statutes, Ladd alleged federal constitutional violations, and brought the matter in district court after remitting the assessed taxes under protest, in the manner set forth in § 226 of title sixty-eight. This statute provides a remedy

"*In cases where the taxes complained of are claimed to be* an unlawful burden on interstate commerce, or the collection thereof *violative of any* Congressional Act or *provision of the Federal Constitution,* or in cases where jurisdiction is vested in any of the Courts of the United States ..." 68 O.S. 1981 § 226(c) (emphasis supplied).

Specifically, Ladd alleges both equal protection and due process violations arising under the fourteenth amendment of the United States Constitution. Ladd contends that these assessments in effect "legislate"

**3.** Ladd kept the remaining five percent (5%) of the purchase price and the $.02/MCF charge for maintenance, cost of upkeep, and operation of the gathering system.

**4.** These assessments are set out in two letters from the Commission to Ladd which were admitted into evidence by stipulation.

**5.** Gross production and petroleum excise taxes are related. Each is a tax based upon the gross value of production. Section 1001 of title 68 of the Oklahoma Statutes authorizes the levy of "a tax equal to seven percent (7%) of the gross value of production", while § 1102 levies petro-

leum excise tax at the rate of eighty-five one thousandths of one percent (.085 of 1%) of the gross value of production and states that "the gross value shall be reported to and collected by the Tax Commission at the same time and in the same manner as ... gross production tax ..." 68 O.S. 1981 §§ 1001, 1102.

**6.** Conservation excise tax taxes volume of gas at the rate of "seven cents ($0.07) per thousand (1,000) cubic feet (MCF), less seven percent (7%) of the gross value of each such MCF of natural gas and/or casinghead gas ..." 68 O.S. 1981 § 1108.

a gross production tax on the liquifiable hydrocarbons extracted downstream through the business of processing the dry gas, and that these assessments arbitrarily tax Ladd in a manner different from the other gas producers in the North East Enid Field. In support of its allegations, Ladd presented the testimony of one of its accountants, Mr. Tommy Eubanks, and of Mr. Del Johnson, Ladd's gas contract administrator. Their testimony and the exhibits admitted into evidence generated the facts as set forth herein. Neither party contests these facts.

At the close of Ladd's case in chief, the Commission demurred to the evidence alleging that Ladd failed to meet its burden of establishing a constitutional injury sufficient to vest jurisdiction in the district court under § 226 of title sixty-eight. The trial court sustained the demurrer, ruling both that Ladd had failed to exhaust its administrative remedies, and that the court lacked subject matter jurisdiction, from which order Ladd appeals.

■ We examine first the trial court's ruling that Ladd failed to exhaust its administrative remedies, and find that no exhaustion requirement exists under § 226 of title 68. Aggrieved taxpayers who protest under § 221 of title 68 must follow the specific administrative procedures set forth therein. Appeals from adverse rulings of the Commission under § 221 lie directly to this court. 68 O.S. 1981 § 225. In contrast, § 226 provides an avenue to district court where the taxes complained of allegedly violate the United States Constitution, and "the judicial remedy granted pursuant to § 226(c) is limited to cases which meet the statutorily delineated criteria." *Cimarron Industries, Inc. v. Oklahoma Tax Commission* 621 P.2d 539, 542 (Okla.1980).

In *Cimmaron,* we ruled that one could not short-circuit the administrative process by resort to district court without first meeting the jurisdictional prerequisites of § 226. Here, the converse is equally true. One may not be deprived of his full and fair day in district court by forcing him to surmount nonexistent administrative hurdles. The plain language of § 226(c) contains no exhaustion requirement, and "where the language of a statute is plain and unambiguous, ... the statute will be accorded the meaning as expressed by the language therein employed." *Cave Springs Public School District v. Blair,* 613 P.2d 1046, 1048 (Okla.1980).

Consequently, the only issue remaining for our review asks whether the court received sufficient evidence to withstand a demurrer. In ruling upon a demurrer to the evidence, ... "the trial court must accept as true all evidence and reasonable inferences therefrom favorable to the party against whom the motion is directed, while disregarding conflicting evidence favorable to the defendant." *LeFlore v. Reflections of Tulsa, Inc.,* 708 P.2d 1068, 1073 (Okla. 1985).

We must measure the alleged constitutional violations against the *LeFlore* test, and focus first upon Ladd's claim of violations arising under the equal protection clause of the fourteenth amendment. Long standing precedent makes the equal protection guarantees applicable to the state's exercise of its taxing power. *Hartford Steam Boiler Inspection & Ins. Co. v. Harrison,* 301 U.S. 459, 461, 57 S.Ct. 838, 839, 81 L.Ed. 1223 (1937). In analyzing Ladd's claim of equal protection violations, we recognize that

"the Constitution does not prohibit reasonable classifications for taxation so long as they rest on a difference having a reasonable relation to the subject of legislation to the end that all persons similarly situated are treated alike. Classifications not manifestly arbitrary or unreasonable are not constitutionally infirm. An invalid classification is that which discriminates between persons or property in like situations, or which is arbitrary, illusory or one that has no fair or substantial relation to the purpose for which it is made. A tax imposed on the basis of an assumed fact which the taxpayer is not allowed to controvert is, of course, arbitrary and unreasonabale." *Suglove v. Oklahoma Tax Commission,* 605 P.2d 1315, 1320 (Okla.1980) (footnotes omitted).

In that regard we have noted that the Equal Protection clause does not impose an ironclad requirement of equality to the exclusion of appropriate flexibility in the process of taxation. *McLoud Telephone Co. v. State Board of Equalization,* 655 P.2d 1037 (Okl.1982).

▌ Neither of the parties contests that Ladd is among the class required to pay taxes on production of oil and/or gas pursuant to 68 O.S. § 1001. This suit focuses principally upon Ladd's claim that the Commission's administration of those statutes treats Ladd differently than other similarly situated producers in the North East Enid Field. In support of its claim, Ladd presented the following evidence:

1. letter from the Commission assessing additional gross production and petroleum excise taxes for Ladd-operated leases which assesses value not only of residue gas sold under the previously described contracts, but also of the liquids extracted before delivery of the dry gas to Cities Service;

2. letter from the Commission assessing additional conservation excise tax based upon the total volume of casinghead gas as measured by the wellhead orifice meters for all the wells in the field from which Ladd purchases casinghead gas;

3. testimony that the Commission's gross production and petroleum excise assessments included one hundred percent (100%) of the purchase price of the residue gas, computed by including the five percent (5%) fee retained by Ladd, as well as the $.02MCF gathering, transportation and processing fee;

4. testimony that other producers were taxed under the gas purchase contract at the ninety-five percent (95%) rate;

5. testimony that no other producer was taxed on the gross value of liquids extracted;

6. testimony that the Commission's method of assessing conservation excise tax on the total volume of casinghead gas at the wellhead is inconsistent with its assessments of gross production and petroleum excise assessments based on the gross value of the purchase price paid for residue gas;

7. copies of identical gas purchase contracts executed by all producers, including Ladd, which reflect the 95% formula.

Based upon this evidence, Ladd argues that the Commission arbitrarily taxed it in a manner different from the similarly situated producers. We agree that this evidence measured against the *LeFlore* and *Suglove* tests presents a *prima facie* claim under the equal protection clause of the fourteenth amendment of the United States Constitution.[7]

All reasonable inferences support this conclusion, and at this stage, the facts are not sufficiently developed from the Commission's point of view to enable a trier of fact to determine that no constitutional injury has occurred without assuming, for example: (1) that the contract formula for valuing residue gas truly represents the gross value of production from outside producers but not from Ladd; or, (2) that the five percent amount retained by Ladd as well as the $.02/MCF amount deducted before the sale of the residue gas represent "gross value" for purposes of 68 O.S. 1981, § 1001, rather than fees attributable to the cost of gathering, transportation and processing the casinghead gas.

Since Ladd's equal protection claim touches upon all of the additional assessments of which it complains, we need not further analyze the evidence in light of the

---

7. In so ruling, we recognize that the parties' main question asks us to clarify two existing cases, *Apache Gas Products Corp. v. Oklahoma Tax Commission,* 509 P.2d 109 (Okla.1973), and *Oklahoma Tax Commission v. Sun Oil Co.,* 489 P.2d 1078 (Okla.1971), to determine whether the Commission can ever levy gross production tax upon the gross value of an enhanced product downstream from the wellhead. However, since the appeal comes before us on the sustentation of a demurrer to the taxpayer's evidence, and without any evidence having been presented by the Commission nor any decision rendered by the trial court on the merits of the claim, we would be premature in addressing the questions of constitutionality. See, *Mitchell v. Williamson,* 304 P.2d 314 (Okla.1956); *In re: Mayes–Rogers Counties Conservancy Dist. Formation,* 386 P.2d 150 (Okla.1963).

due process claim. The order of the trial court is reversed, and the matter is remanded for further proceedings below.

HARGRAVE, C.J., OPALA, V.C.J., and HODGES, LAVENDER, SIMMS, DOOLIN and KAUGER, JJ., concur.