**PRIVATE TRUCK COUNCIL OF AMERICA, INC., Circle W Transportation, Inc., and Roy E. Griffis, on behalf of themselves and all others similarly situated, Appellants,**

v.

**OKLAHOMA TAX COMMISSION, et al., Appellees,**

and

**Associated Motor Carriers of Oklahoma, Inc., Intervenor.**

**No. 68401.**

Supreme Court of Oklahoma.

July 19, 1994.

---

Richard A. Allen, Richard P. Schweitzer, Zuckert, Scoutt & Rasenberger, Washington, DC, William B. Rogers, William B. Rogers & Associates, Oklahoma City, for appellants.

David Hudson, Gen. Counsel, Stanley P. Johnston, Deputy Gen. Counsel, Oklahoma Tax Com'n, Oklahoma City, for appellee.

PER CURIAM.

This case is before us on remand from the United States Supreme Court, 501 U.S. 1247, 111 S.Ct. 2882, 115 L.Ed.2d 1048. The judgment was vacated and the cause remanded for our consideration in light of *Dennis v. Higgins,* 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991). We held in our original opinion in this appeal, *Private Truck Council, Inc. v. Oklahoma Tax Commission,* 806 P.2d 598 (Okla.1991), that 68 O.S.Supp.1982 § 607.1 and 47 O.S.Supp.1986 § 1120(K) were unconstitutional because they violated the fundamental requirement of nondiscrimination against interstate commerce.[1] Based

---

1. Plaintiffs, who are appellants here, filed suit against defendants for a refund of taxes imposed under 68 O.S.Supp.1983 § 607.1 and 47 O.S.Supp.1983 § 22.5j(K). These statutes im-

upon that holding, we found it unnecessary to address plaintiffs' constitutional challenge of the tax statutes under the Privileges and Immunities Clause. We affirmed the trial court's denial of plaintiffs' federal claim for refund under 42 U.S.C. § 1983 because Oklahoma has an adequate state remedy affording the requested relief. We allowed a refund to plaintiffs based upon the refund procedures in 68 O.S.1981 § 226, from the payment of the 1987 taxes, based upon *American Trucking Ass'ns., Inc. v. Scheiner,* 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987), and *American Trucking Ass'ns., Inc. v. Smith,* 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990).

The trial court denied plaintiffs' motion for summary judgment, finding that the two statutes did not violate the Commerce Clause, and dismissed Count III of plaintiffs' petition, which sought a refund under 42 U.S.C. § 1983, for failure to state a claim. Plaintiffs' Count III asserted that the defendants violated the Commerce Clause and the Privileges and Immunities clauses of the United States Constitution, as set out in Counts I and II of their petition, under color of state law, and threatened to deprive plaintiffs of rights guaranteed by the United States Constitution. Thus, plaintiffs alleged that defendants were liable to plaintiffs under 42 U.S.C. § 1983. Plaintiffs prayed for: 1) a declaratory judgment that the two statutes were null and void because they violated the United States Constitution and other laws, 2) a permanent injunction enjoining the Oklahoma Tax Commission from assessing or collecting the retaliatory taxes and fees on nonresident motor carries under the above-referenced statutes, 3) a refund of all retaliatory taxes and fees collected by the Oklahoma Tax Commission pursuant to 68 O.S. 1981 § 607.1 and 47 O.S.Supp.1986 § 1120(K), plus interest, and 4) attorneys' fees under 12 O.S.1981 § 18(C) and 42 U.S.C. § 1988, and costs.

The trial court dismissed plaintiffs' claim for refund under 42 U.S.C. § 1983, relying on *Consolidated Freightways of Delaware v.*

*Kassel,* 730 F.2d 1139 (8th Cir.1984), in which the Eighth Circuit had held that violations of the Commerce Clause were not a basis for bringing a civil rights action under 42 U.S.C. § 1983. We affirmed the trial court's denial of plaintiffs' claim for refund under § 1983, because Oklahoma has an adequate state remedy affording the relief plaintiffs requested. We reversed the trial court's summary judgment to defendants on Counts I and II of plaintiffs' petition, finding that the two statutes violated the Commerce Clause. We denied the plaintiff's claim for attorneys' fees, however, because plaintiffs had no civil rights claim under § 1983 and, accordingly, no right to attorneys' fees under 42 U.S.C. § 1988. We also denied plaintiffs' claim for attorneys' fees under state law on the ground that the statute upon which plaintiffs relied, 12 O.S.1981 § 18(C) was repealed before plaintiffs filed their action.

After our decision in the case at bar, the United States Supreme Court handed down the case of *Dennis v. Higgins,* 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991). In *Dennis,* the United States Supreme Court held, contrary to our earlier opinion in this matter, that claims for violations of the Commerce Clause *may be* brought under § 1983. In *Dennis* the trial court held that the Nebraska taxing statutes at issue violated the Commerce Clause, for essentially the same reasons that we held in our first opinion in the case at bar. The *Dennis* trial court permanently enjoined the Nebraska Department of Motor Vehicles from assessing, levying or collecting the taxes and fees. The Nebraska trial court awarded the plaintiffs attorneys' fees and expenses under the "common fund" doctrine, but denied the § 1983 claims under *Kassel.* Both sides appealed, although the unconstitutionality of the taxing statutes was not appealed. The Supreme Court of Nebraska affirmed the dismissal of plaintiffs' § 1983 claim, but reversed the allowance of attorneys' fees under the common fund doctrine. The Nebraska Supreme Court held, despite § 1983's broad language, that there was no cause of action under § 1983 for violation of the Commerce Clause.

posed fees and taxes on nonresident motor carriers operating in Oklahoma to the same extent carriers resident in Oklahoma were taxed by the

nonresident motor carriers' states of residence. Plaintiffs claimed that these statutes were unconstitutional.

As in *Dennis*, the trial court in the case at bar ruled that plaintiffs failed to state a claim under § 1983.

In *Dennis v. Higgins, Id.*, the United States Supreme Court decided that the Commerce Clause creates rights that can be asserted under 42 U.S.C. § 1983 because the Commerce Clause confers rights, privileges or immunities within the meaning of § 1983. Thus, suits for violation of the Commerce Clause may be brought under § 1983 to obtain injunctive and declaratory relief from state action that violates the Commerce Clause. We directed the parties to file supplemental briefs addressing the affect of *Dennis* on plaintiffs' claims.

Here, plaintiffs sought declaratory and injunctive relief, a refund of taxes paid, and an attorneys' fee, under both state law, and § 1983. In our first opinion we held the two taxing statutes unconstitutional and granted plaintiffs a partial refund. It is clear to us that the United States Supreme Court vacated our opinion because of our reliance on *Kassel*, which the Supreme Court repudiated in *Dennis*. *Dennis*, however, did not address the critical issue of whether a state court, under the principles of comity, should decline to grant relief under § 1983, a federal law, when a federal court would have been prohibited from granting such relief under The Tax Injunction Act, 28 U.S.C. § 1341.

## I.

■ We now reconsider whether plaintiffs are entitled to assert federally created remedies under §§ 1983 and 1988 in this state court action. We hold, under the principles of comity and federalism, that plaintiffs are not entitled to relief under §§ 1983 and 1988.

We have not previously addressed this issue, but the Supreme Court of North Dakota recently considered it. *State v. Quill*, 500 N.W.2d 196 (N.D.1993) Cert. Denied — U.S. ——, 114 S.Ct. 173, 126 L.Ed.2d 132 (1993), was virtually identical to the case at bar. There, as here, 1) the matter came before the court following reversal by the United States Supreme Court of an earlier opinion, which had erroneously held that a state tax act did not violate the Commerce Clause of the U.S. Constitution; 2) the taxpayers sought an attorneys' fee under § 1983 and § 1988; and 3) the parties did not dispute that state statutes provided the parties full relief from the unconstitutionality of the involved tax acts. The *Quill* court denied an attorneys' fee to Quill, on the ground of comity and federalism, because a federal court would have been prohibited from granting such relief under the Tax Injunction Act, 28 U.S.C. § 1341.[2] The *Quill* court concluded that, while § 1341 did not expressly prohibit state courts from granting federally created relief, state courts should decline to exercise such jurisdiction. Relying on its earlier opinion in *Linderkamp v. Bismarck School District No. 1*, 397 N.W.2d 76 (N.D. 1986), the *Quill* court held that the taxpayer could not obtain § 1983 relief in the state court action.

We find the language of the North Dakota Supreme Court's *Linderkamp* opinion convincing:

> Recognition that the proscriptions of the Tax Injunction Act are based at least in part upon deference to state remedial schemes leads to the conclusion that *a state court § 1983 action, which applies a federal remedial statute for alleged violations of federally-created rights, is no less of a burden upon the state remedial scheme than would be a § 1983 action brought in federal court....* [Emphasis added.] *Linderkamp*, 397 N.W.2d at 80.

Plaintiffs' contentions here, are virtually identical to those of the plaintiff in *Quill*. Plaintiffs contend that the *Quill–Linderkamp* rationale is contrary to the holdings of the U.S. Supreme Court in *Dennis*, and *Howlett v. Rose*, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). We disagree. Neither *Dennis*, nor *Howlett*, addressed the issue of whether a state court should decline to impose federal remedies when state remedies are adequate and a federal court would,

---

**2.** § 1341 directs:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any

tax under state law where a plain, speedy and efficient remedy may be had in the courts of such state.

therefore, be prohibited from enforcing such remedies under the Tax Injunction Act.[3]

The *Dennis* court's majority did not address whether state remedies were adequate, or the effect of the Tax Injunction Act on the issue of whether the state court should grant § 1983 relief, although a federal court could not do so. Justice Kennedy's dissent in *Dennis*, in which the Chief Justice concurred, however, expressed concern that ignoring the Tax Injunction Act risks "destruction of state fiscal integrity in a manner which may require congressional correction." *Dennis*, 498 U.S. at 464–65, 111 S.Ct. at 880.

In *Howlett*, the U.S. Supreme Court held that the Supremacy Clause of the Constitution is "the supreme law of the land" and requires state courts to enforce federally created remedies "according to their regular modes of procedure." *Howlett*, 496 U.S. at 367, 110 S.Ct. at 2438. As noted in *Quill*, however, *Howlett* makes clear that "the Supremacy Clause precludes state courts from applying state procedural rules *that would necessarily produce a different result than if the case had been brought in federal court.*" [Emphasis added.] *Quill*, 500 N.W.2d at 199. Our holding today, applying the *Quill–Linderkamp* rationale, is perfectly consistent with the federal interest, and this State's interest, in having state courts apply the law no differently than would federal courts. Clearly, state courts are not required to grant attorneys' fees under §§ 1983 and 1988, when federal courts would be prohibited from doing so.

Plaintiffs argue, correctly, that The Tax Injunction Act applies only to federal courts.

Plaintiffs, however, fail to recognize that one of the principles of comity is that potential differences in remedies available in state court and federal court should be avoided. The existence of such differences encourages forum shopping. As the U.S. Supreme Court observed in *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), "A law that predictably alters the outcome of § 1983 claims depending solely on whether they are brought in state or federal court within the same State is obviously inconsistent with this federal interest in intrastate uniformity." To order an attorneys' fee under § 1988 here, would pervert this wise policy of intrastate uniformity between state and federal courts.

In addition to North Dakota, at least three other states have declined to impose § 1983 remedies in cases in which a federal court could not have also granted such remedies: *Ziska v. Water Pollution Control Authority*, 195 Conn. 682, 490 A.2d 509 (Conn.1985); *Backus v. Chilivis*, 236 Ga. 500, 224 S.E.2d 370 (Ga.1976); *Raschke v. Blancher*, 141 Ill. App.3d 813, 491 N.E.2d 1171, 96 Ill.Dec. 711 (Ill.App.1986) appeal denied (1986). Although there is authority contrary to the views expressed in the cases from these four states, we believe that these cases represent the better view.[4] We have found no case, which granted § 1983 relief in these circumstances, which satisfactorily explains to us why a state court should do so.

An important distinction exists between a state court's *jurisdiction,* and the principles of *comity.* In *State Tax Commission v.*

---

3. Because of the proscriptions of The Tax Injunction Act, the adequacy of the state remedy in this action complaining of a tax statute, must be measured by what is required by 14th Amendment due process, not by the remedies made available by the Congress in § 1983 actions. State law satisfied due process requirements by providing for a refund of the taxes the state wrongly exacted, interest on those amounts, and an injunction prohibiting the collection of such taxes in the future. No case we have found requires an attorneys' fee to be granted to satisfy due process requirements. Indeed, the Congress did not provide for an attorneys' fee in § 1983 actions until the 1976 amendment to § 1988 so provided. Pub.L. 94–559.

4. A few state courts have applied § 1983 remedies, despite the adequacy of state law remedies, and the fact that a federal court would have been prohibited from granting such relief because of The Tax Injunction Act. See, for example, *Harlan Sprague Dawley, Inc. v. Indiana Dept. of State Revenue*, 583 N.E.2d 214 (Ind.Tax 1991) and *Murtaugh v. County of Berks*, 535 Pa. 50, 634 A.2d 179, cert. denied —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 71 (1994). The *Dawley* and *Murtaugh* courts justified allowing the plaintiffs to recover § 1983 remedies, "because there is no risk of federal court interference." Neither court discussed the likelihood of forum shopping created by allowing the parties relief in state court to which they would not have been entitled in federal court.

*Fondren,* 387 So.2d 712, 723 (Miss.1981), the Mississippi Supreme Court held that a state court hearing a § 1983 claim lacked *jurisdiction* to grant more relief than a federal court could have done. The Connecticut Supreme Court, in *Ziska,* rejected the *Fondren* court's analysis, saying, "we believe that the better view is that § 1341 [The Tax Injunction Act] does not deprive state courts of all jurisdiction to hear § 1983 challenges to state taxes. *Section 1341 is rooted in principles of federalism. It reflects the policy that federal courts should not interfere with the collection of state taxes."* [Emphasis added.] 490 A.2d at 513. The *Ziska* court declined to hear plaintiffs § 1983 claims under the principles of comity and federalism.

The Mississippi Supreme Court later observed, in *Burrell v. Mississippi, State Tax Commission,* 536 So.2d 848, 863–64 (Miss. 1988), that it had implicitly overruled *Fondren* in *Marx v. Truck Renting and Leasing Ass'n., Inc.,* 520 So.2d 1333, 1346 (Miss.1987). In both opinions, the Mississippi court, as it had in *Fondren,* limited its discussions to the *jurisdiction* of state courts to hear § 1983 claims. Neither *Fondren,* nor the two later opinions discussed the comity and federalism issues.

■ Plaintiffs rely on an unpublished opinion of the Connecticut intermediate appellate court, *Neiman Marcus Group, Inc. v. Meehan,* 1991 WL 194298, LEXIS 2135 (Conn.Super.1991), which concluded that *Ziska* could not be relied upon as authority to support the state's claim that Connecticut courts lacked *jurisdiction* to consider § 1983 claims. As in the later Mississippi opinions, the comity and federalism issues were not considered by the *Neiman Marcus* court. Our analysis convinces us that if the Connecticut Supreme Court were again presented with the issues of comity and federalism, which it decided in *Ziska,* it would again conclude, as the North Dakota court did in *Quill* and *Linderkamp,* that the state court

should not give relief that a federal court sitting in the same state could not give.[5]

We hold that the trial court reached the right result in declining to grant an attorneys' fee under §§ 1983 and 1988.

## II.

■ Plaintiffs claim that they are entitled to an attorneys' fee under state law. They contend that they should be granted a fee from the amount of the recovery under the "common fund doctrine." Plaintiffs made identical claims in the first appeal of this case. The facts concerning this issue are unchanged from the first appeal. Consequently, our conclusion in the first appeal that plaintiffs are not entitled to an attorneys' fees under state law is the law of the case. "As the 'law of the case,' the original appeal controls all subsequent proceedings, and will not be reversed on a second appeal, [unless not to do so would] result in a gross or manifest injustice" *McDonald v. Humphries,* 810 P.2d 1262, 1266–67 (Okla.1990); *Handy v. City of Lawton,* 835 P.2d 870, 873 (Okla.1992). We find no error in our prior opinion on this issue. We are satisfied that our refusal to revisit the issue will not result in a "gross or manifest injustice." *McDonald,* 810 P.2d at 1267. Consequently, we decline to reconsider the issue.

Although the reasons for so doing have changed, our directions to the trial court upon remand following the first appeal remain in effect.

**JUDGMENT REINSTATED.**

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE and WATT, JJ., concur.

KAUGER and SUMMERS, JJ., concur in part, dissent in part.

OPALA and ALMA WILSON, JJ., dissent.

---

**5.** The *Neiman Marcus* court relied on the U.S. Supreme Court's opinions in *Dennis* and *Felder* to support its position that *Ziska* was no longer good law. The comity and federalism issues were not before the U.S. Supreme Court in *Dennis,* and *Felder* points out that a policy allowing the choice of a federal or state forum, within the same state, to change the result of a § 1983 case, "is obviously inconsistent with this federal interest in intrastate uniformity." This desire for intrastate consistency is the basis for our opinion that we should not allow § 1983 remedies here.

ALMA WILSON, Justice, with whom OPALA, J., joins, dissenting:

Today's opinion closes the state courts to a taxpayer's § 1983 action, which may have the effect of opening the federal courts to state tax challenges. *Dennis v. Higgins,* 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991) requires a substantive remedy be afforded taxpayers aggrieved by state laws that violate the Commerce Clause. The Tax Injunction Act, 28 U.S.C. § 1341 requires the state to provide minimum procedural protection to taxpayers. The majority fails to recognize the distinction. Accordingly I must respectfully dissent, even though I would, as the Court does today, affirm the district court's dismissal of the § 1983 claim in this cause.

In *Private Truck Council of America, Inc. v. Oklahoma Tax Commission,* 806 P.2d 598 (Okla.1991), this Court reversed the district court, holding that 68 O.S.Supp.1982 § 607.1 and 47 O.S.Supp.1986, § 1120(K) violate the Commerce Clause, U.S. Const., Art. I, § 8, cl. 3, and allowing partial refunds of taxes paid thereunder, but affirmed the district court's dismissal of the § 1983 claim. On certiorari, the United States Supreme Court ordered "that the judgment of the above court in this cause is vacated with costs, and that this cause is remanded to the Supreme Court of Oklahoma for further consideration in light of *Dennis v. Higgins,* 498 U.S. [439, 111 S.Ct. 865, 112 L.Ed.2d 969] (1991)." *Dennis v. Higgins* holds that the Commerce Clause confers rights, privileges and immunities upon state taxpayers within the meaning of § 1983. The *Dennis* holding rests upon the Commerce Clause restriction on state power combined with the Due Process Clause entitlement to relief. Hence, *Dennis* allows a taxpayer to seek meaningful relief in a § 1983 action in state court where the state remedy does not provide meaningful relief from the exaction of taxes in violation of the Commerce Clause.

Similar to the instant cause, *Dennis* was a class-action suit by an Ohio motor carrier in the state court of Nebraska seeking declaratory and injunctive relief and recovery of state taxes paid pursuant to Nebraska's retaliatory tax statute and costs and attorney fees. The Nebraska trial court declared the challenged statute violative of the Commerce Clause, entered a permanent injunction, awarded attorney fees and costs under the common fund doctrine and dismissed the § 1983 claim. The dismissal of the § 1983 claim was challenged on appeal. Relying on *Consolidated Freightways Corp. of Delaware v. Kassel,* 730 F.2d 1139 (8th Cir.1984), cert. denied, 469 U.S. 834, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984), the Nebraska Supreme Court determined that Commerce Clause violations are not cognizable under § 1983 and affirmed the dismissal. The United States Supreme Court reversed and remanded for further proceedings, holding that a taxpayer has a right within the meaning of § 1983 to seek relief for Commerce Clause violations. The *Dennis* holding is grounded in the Commerce Clause and *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Dept. of Business Regulation of Florida,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990):

... The Commerce Clause "has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." *South–Central Timber Development, Inc. v. Wunnicke,* 467 U.S. 82, 87, [104 S.Ct. 2237, 2240, 81 L.Ed.2d 71] (1984). In addition, individuals injured by state action may sue and obtain injunctive and declaratory relief. See, e.g., *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Dept. of Business Regulation of Fla.,* 496 U.S. 18, 31 [110 S.Ct. 2238, 2247, 110 L.Ed.2d 17] (1990). Indeed, the trial court in the case before us awarded such relief, and respondents do not contest that decision. We have also recently held that taxpayers who are required to pay taxes before challenging a state tax that is subsequently determined to violate the Commerce Clause are entitled to retrospective relief "that will cure any unconstitutional discrimination against interstate commerce during the contested period." *Id.,* at 51 [110 S.Ct. at 2258]. **This combined restriction on state power and entitlement to relief under the Commerce Clause amounts to a "right, privilege, or immunity" under the ordi-**

nary meaning of those terms. [Footnote omitted.]

[Emphasis added.]

*Dennis v. Higgins,* 498 U.S. at 447, 111 S.Ct. at 870–71.

*McKesson Corp. v. Division of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) was initiated to challenge Florida's liquor tax as violative of the Commerce Clause because of its preferences for liquor made from crops which Florida is adapted to growing. A similar tax scheme had been struck down in *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). The Florida Supreme Court declared that the tax scheme violated the Commerce Clause and permanently enjoined its enforcement, but refused to order refund of the tax. The United States Supreme Court addressed the question of whether prospective relief [declaratory and injunctive relief], by itself, exhausts the requirements of federal law where a state places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality. Because the exaction of a tax constitutes deprivation of property, the unanimous *McKesson* Court determined that prospective relief alone was not sufficient to satisfy the commands of the Due Process Clause of the Fourteenth Amendment. Analyzing the states' constitutional obligation to provide procedural safeguards against the unlawful exaction of taxes, *McKesson* sets forth three general categories of relief that would be meaningful under the Due Process Clause: 1) a remedy to redress taxpayer grievances before payment; **or** 2) a remedy for refund of the unlawful part of the tax from those who were required to pay it; **or** 3) imposition of back taxes on those who were not required to pay the tax resulting in the discrimination. The *McKesson* Court left the selection and fine-tuning of the relief to be afforded a taxpayer to each state, as long as the relief is meaningful—cures, at least partially, the mischief that has been done.

. . . We have already noted that States have a legitimate interest in sound fiscal planning and that this interest is sufficient-

ly weighty to allow States to withhold predeprivation relief for allegedly unlawful tax assessments, providing postdeprivation relief only. See *supra,* at 37 [110 S.Ct. at 2250–51]. But even if a State chooses to provide partial refunds as a means of curing the unlawful discrimination (as opposed to increasing the tax assessment of those previously favored), the State's interest in financial stability does not justify a refusal to provide relief. As noted earlier, see *supra,* at 46 [110 S.Ct. at 2255], the State here does not and cannot claim that the Florida courts' invalidation of the Liquor Tax was a surprise, and even after the trial court found a Commerce Clause violation the State failed to take reasonable precautions to reduce its ultimate exposure for the unconstitutional tax. And in the future, States may avail themselves of a variety of procedural protection against any disruptive effects of a tax scheme's invalidation, such as providing by statute that refunds will be available to only those taxpayers paying under protest, or enforcing relatively short statutes of limitation applicable to refund actions. See *supra,* at 45 [110 S.Ct. at 2254]. Such procedural measures would sufficiently protect States' fiscal security when weighed against their obligation to provide meaningful relief for their unconstitutional taxation.

Respondents also observe that the State's choice of relief may entail various administrative costs (apart from the "cost" of any refund itself [Footnote omitted.] ). Cf. *Mathews [v. Eldridge], supra* [424 U.S. 319], at 348 [96 S.Ct. 893, at 909, 47 L.Ed.2d 18 (1976) ] ("[T]he Government's interest . . . in conserving scarce fiscal and administrative resources is a factor that must be weighed" when determining precise contours of process due). The State may, of course, consider such costs when choosing between the various avenues of relief open to it. Because the Florida Supreme Court did not recognize in its refund proceeding the State's obligation under the Due Process Clause to rectify the invalidity of its deprivation of petitioner's property, the court did not consider how any administrative costs might influence the selection and fine-tuning of the relief

afforded petitioner. We leave this to the state court on remand.

*McKesson,* 496 U.S. at 50–51, 110 S.Ct. at 2257–58.

By its reliance on *McKesson* in finding that a Commerce Clause violation is within the meaning of § 1983, *Dennis* stands for the propositions that: 1) a state taxpayer is entitled to meaningful relief from the payment of taxes which are subsequently determined to be violative of the Commerce Clause; and, 2) where the state remedies do not provide meaning relief, a state taxpayer may seek relief in state courts pursuant to 42 U.S.C. § 1983.[1] That is, I read *Dennis* as providing a § 1983 remedy to state taxpayers for Commerce Clause violations when, and only when, the state has failed to provide a remedy that affords meaning relief. Thus, rather than instruct our district courts to decline jurisdiction over a taxpayer's § 1983 claim, we should direct our district courts to entertain a taxpayer's § 1983 claim whenever in a case tendered to them the available state law remedies are found short of the "meaningful relief" requirement of the Due Process Clause.

Although the majority does not review the state remedies, its conclusion that the state law remedies available to the taxpayers herein are adequate is correct even under the "meaningful relief" requirement of the Due Process Clause as explained in *McKesson.* Oklahoma's predeprivation remedies afforded taxpayers are limited to situations where the authority of the assessing entity is challenged or where the tax has not become due and payable.[2] Oklahoma's postdeprivation administrative remedies with the right of appellate review are limited only by time restrictions, while the district court remedies are further limited.[3]

1. Where a taxpayer fails to report and pay or under-reports and under-pays, the Oklahoma Tax Commission may issue a proposed assessment and the taxpayer may seek an administrative hearing on the proposed assessment by way of a written protest before the payment of the tax. 68 O.S.1991, § 221. However judicial review of the protest by appeal may not be had without payment of the proposed assessment under protest and, if the taxpayer prevails the taxes paid under protest will be refunded. 68 O.S. 1991, § 225.

2. Where a taxpayer has voluntarily reported and paid taxes, the taxpayer may claim a refund of taxes paid within three years from the date of the claim alleging

---

1. In light of the following authorities, *Dennis v. Higgins* can only be read as affording a taxpayer the right to file suit for violations of the Commerce Clause in state court under § 1983. Federal Courts may not render declaratory judgments as to the constitutionality of state tax laws. *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943). Federal Courts may not grant damages relief in a § 1983 action challenging state tax law, if taxpayers have an adequate state remedy for protection of their federal right. 28 U.S.C. § 1341 and *Fair Assessment in Real Estate Association v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). Absent waiver by the state or a valid congressional override, the Eleventh Amendment bars damages actions against States and state officers in their official capacity in federal court. *Kentucky v. Graḥam,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Federal law is part of the Law of the Land and enforceable in state court. *Howlett v. Rose,* 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). Claims pursuant to 42 U.S.C. § 1983 may be maintained in our district courts. *Martin v. Harrah Independent School District,* 543 P.2d 1370 (Okla.1975) and *Willbourn v. City of Tulsa,* 721 P.2d 803 (Okla.1986).

2. An Oklahoma taxpayer may not maintain an action to enjoin the collection of a tax. *Oklahoma Tax Commission v. Harris,* 191 Okla. 28, 126 P.2d 685 (1942). However, an Oklahoma taxpayer may maintain a declaratory judgment action to challenge the validity of a taxing statute on its face before the tax becomes due, *Oklahoma Tax Commission v. Smith,* 610 P.2d 794 (1980), or to challenge the authority of the assessing entity. *United Airlines, Inc. v. State Board of Equalization,* 789 P.2d 1305 (Okla. 1990).

3. Citation is to the 1991 codification of the statutes providing taxpayer remedies. Although these statutes may have been amended since this suit was instituted and since the 1991 codification, the substance of the taxpayer remedies have not changed. Also, the remedies outlined herein are not intended to be exhaustive. Each of the various tax codes contain additional remedies or restrictions peculiar to the tax. For instance, income tax refunds are authorized and limited by 68 O.S.1991, § 2373. See, *Strelecki v. Oklahoma Tax Commission,* 872 P.2d 910 (Okla.1993).

erroneous payment. 68 O.S.1991, § 227.[4] If the refund is denied at the division level, the taxpayer may seek an administrative hearing on the claim. 68 O.S.1991, §§ 227 and 228. Judicial review of the claim for refund by appeal may be had, and if the taxpayer prevails the taxes erroneously paid during the previous three years will be refunded. 68 O.S.1991, § 225.

3. Where a taxpayer voluntarily reports but pays the tax under protest, as the motor carriers did in this cause, the taxpayer may claim a refund and seek an administrative hearing on the challenge to the payment. 68 O.S.1991, § 207. Judicial review of the challenge by appeal may be had, and if the taxpayer prevails the taxes paid under protest will be refunded. 68 O.S.1991, § 225.

4. In addition to the administrative and judicial review provided in 68 O.S.1991, §§ 207, 221, 227 and 225, a taxpayer may seek review in the state district court. 68 O.S.1991, § 226.[5] The state district court remedy is limited to challenges of taxes under federal law. 68 O.S.1991, § 226(c).[6] If the challenged taxes have not been paid, the taxpayer must pay under protest within thirty days from the mailing of the assessment and give notice of intent to file suit. 68 O.S.1991, § 226(b).[7] Similarly situated taxpayers may likewise pay the tax under protest and, upon request, enter into an agreement to be bound by the decision in another taxpayer suit, rather than file a separate suit. 68 O.S.1991, § 226(d). If the taxpayer prevails the taxes paid under protest will be refunded. 68 O.S.1991, § 226(b).[8]

These postdeprivation taxpayer remedies allow the refund of taxes paid under protest and the refund of erroneous payment of taxes during the preceding three years. Where

4. Taxpayers who did not protest the payment of a tax under a statute which is subsequently declared unconstitutional have a statutory right to recover taxes paid within the time limits prescribed. *Sun Oil Company v. Oklahoma Tax Commission,* 620 P.2d 896 (1981). The *Sun Oil* case involved refund of use taxes that were declared unconstitutional in an original action before this Court in *Phillips v. Oklahoma Tax Commission,* 577 P.2d 1278 (Okla.1978).

5. Subsection (a) of Section 226, as amended by 1990 Okla.Sess.Laws, ch. 339, § 16, provides:
(a) In addition to the right to a protest of a proposed assessment as authorized by Section 221 of this title, a right of action is hereby created to afford a remedy to a taxpayer aggrieved by the provisions of this article or of any other state tax law, or who resists the collection of or enforcement of the rules and regulations of the Tax Commission relating to the collection of any state tax; however, such remedy shall be limited as prescribed by subsection (c) of this section.

6. The judicial remedy granted in § 226 is limited to cases which meet the statutory delineated criteria 1) an unlawful burden on interstate commerce, 2) violative of Acts of Congress or the United States Constitution, or 3) in cases where jurisdiction is vested in any of the courts of the United States. *Cimarron Industries, Inc. v. Oklahoma Tax Commission,* 621 P.2d 539 (Okla. 1980), wherein we decided that the taxpayer failed to bring itself within § 226 and thus should have exhausted its administrative remedies. Subsequently in *Ladd Petroleum Corporation v. Oklahoma Tax Commission,* 767 P.2d 879 (Okla.1989), this Court concluded that there is no requirement of exhaustion of administrative remedies under § 226. The dispositive issue in *Ladd* was whether the trial court erred in sustaining the Oklahoma Tax Commission's demurrer to the evidence on the basis that the taxpayer was not entitled to maintain an action under § 226 because it failed to present evidence of a violation of federal law.

Allowing taxpayers to assert federal challenges in district court without the necessity of exhausting administrative remedies avoids needless litigation when the administrative agency has no authority to declare a tax statute void as contrary to federal law. *Dow Jones & Co. v. Oklahoma Tax Commission,* 787 P.2d 843 (Okla.1990).

7. Pursuant to § 226, the payment of a proposed assessment under protest within thirty days is jurisdictional and may not be extended under the provisions of § 221 that allow an extention of time to file a protest and seek an administrative hearing. *Ladd Petroleum Corporation v. Oklahoma Tax Commission,* 619 P.2d 602 (Okla. 1980).

8. In *Stallings v. Oklahoma Tax Commission,* appeal, 880 P.2d 912, opinion promulgated on July 19, 1994, this Court ruled that § 226 provides a district court remedy to a taxpayer against whom the OTC has issued a proposed assessment. *Stallings* denied a § 226 action to the taxpayers who had overpaid taxes and claimed the presence of a federal constitutional infirmity by means of an unlawful exaction. The *Stallings* opinion could bring Oklahoma's postdeprivation remedies below the "meaningful relief" demanded by federal due process as to those taxpayers who self-assess an illegal exaction as required by the tax reporting and paying statutory provisions.

the tax is challenged under federal law, the district court remedy allows taxpayers to seek refund of the taxes paid under protest without the necessity of multiple suits. With these postdeprivation remedies, Oklahoma preserves its fiscal affairs from disruption except for the refund of taxes paid under protest or taxes paid voluntarily during the preceding three years. Where suit is filed in district court, Oklahoma has further protected its fiscal security by allowing a single suit for the determination of a violation of federal law thereby dispensing with the costs of multiple suits. These postdeprivation administrative and judicial remedies afforded taxpayers in Oklahoma fit neatly within the "meaningful relief" requirement of the Due Process Clause of the Fourteenth Amendment as pronounced in *McKesson*.

The district court denied the § 1983 claim herein, for failure to state a claim, and the attendant § 1988 attorney fees request. Because my review of extant jurisprudence convinces me that the state remedies which were affordable to these taxpayers in this case satisfy the "meaningful relief" standards, I would affirm the district courts dismissal of the § 1983 and § 1988 claims herein.

Even though I would reach the same result reached by the Court today, the flaw in the majority's rationale must be discussed. Following *State v. Quill*, 500 N.W.2d 196 (N.D.1993), cert. denied —— U.S. ——, 114 S.Ct.173, 126 L.Ed.2d 132, the majority opinion holds that our state courts should decline to grant relief under § 1983 to a taxpayer aggrieved by a tax statute that violates the Commerce Clause because the federal courts are prohibited from granting such relief under 28 U.S.C. § 1341. Section 1341, the Tax Injunction Act of 1937, provides that the federal district courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." The federal Tax Injunction Act appears to defer to state remedies similarly to *McKesson*. But, neither the majority nor the *Quill* court recognize the procedural/substantive demarcation. The "plain, speedy and efficient" remedy in state court requirement in § 1341 is a procedural requirement. *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981). The "meaningful relief" requirement of the Due Process Clause as pronounced in *McKesson* is a substantive requirement. Oklahoma's taxpayer remedies satisfy the minimum procedural requirements of § 1341. *Cities Service Gas Co. v. Oklahoma Tax Commission*, 656 F.2d 584 (10th Cir.1981) cert. denied, 454 U.S. 1124, 102 S.Ct. 972, 71 L.Ed.2d 111, following *Rosewell*. However, it does not necessarily follow that those same remedies are meaningful under the Due Process Clause. Hence, *Quill* may be no more than a primrose path.

*Quill* is not virtually identical to this cause, as the majority says. North Dakota sought declaratory judgment in its state court that Quill Corp., as an out-of-state entity doing substantial mail order business in the state, was required to collect, report and remit state use tax. Quill Corp. had refused to collect the North Dakota tax—that is, Quill Corp. had not been deprived of any property right except maybe for the cost of defending the declaratory judgment. Quill Corp. filed a counterclaim alleging it was entitled to relief under § 1983. The North Dakota Supreme Court upheld the tax statute which imposed the collection duty on an out-of-state vendor, concluding that the statute is consistent with *National Geographic Society v. California Board of Equalization*, 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977) and that *National Bellas Hess, Inc. v. Department of Revenue*, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967) is obsolete. Quill Corp.'s counterclaim was dismissed. On certiorari, the United States Supreme Court reversed the North Dakota Supreme Court, concluding that the statute violated the Commerce Clause, refused to overrule *National Bellas Hess* and remanded the cause to the state for further proceedings. *Quill Corporation v. North Dakota*, —— U.S. ——, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). In *Quill*, the High Court does not mention the dismissal of § 1983 claim, nor did it remand in light of *Dennis v. Higgins*. The North Dakota Supreme Court was not concerned with a meaningful *McKesson* refund relief as is involved herein. Thus, *Quill* is readily distinguish-

able and should not be readily followed. Further, the *Quill* rationale does not fall within the guidelines set by the United States Supreme Court in *Howlett v. Rose,* 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990), for state courts to decline jurisdiction over one category of § 1983 claims.

Predicating a § 1983 taxpayer suit upon the inadequacy of the available state remedies is consistent with the aftermath of *Dennis.* The United States Supreme Court has said that "§ 1983 remains a generally and presumptively available remedy for claimed violations of federal law. *Dennis v. Higgins,* 498 U.S. 439, 443, 111 S.Ct. 865, 868, 112 L.Ed.2d 969 (1991)." *Livadas v. Bradshaw, California Labor Commissioner,* —— U.S. ——, ——, 114 S.Ct. 2068, 2083, 129 L.Ed.2d 93 (1994). Further, in *Heck v. Humphrey,* —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Court said that a § 1983 action would be denied a prisoner, unless and until the conviction or sentence is reversed, expunged, invalidated or impugned by the grant of habeas corpus.